METROPOLITAN PAVING COMPANY v. BROWN-CRUMMER INVESTMENT COMPANY and FIDELITY NATIONAL BANK & TRUST COMPANY, Appellants.

In Banc, July 18, 1925.

1. **ASSIGNMENT OF CONTRACT: Void or Voidable: False Representations.** The assignment of a contract, which it is claimed has already been breached, is not void, but only voidable, if obtained by false representations and deceit of the assignee. If a party, understanding the terms and nature of a contract, is induced to sign it by fraudulent representations outside its terms, it is voidable, and must be set aside before the party defrauded can maintain an action upon the contract.

2. ———: ———: ———: **Release: Statute: Restitution.** Section 1238, Revised Statutes 1919, providing that "whenever a release . . . or other discharge of the cause of action sued on shall be set up or pleaded in the answer in bar to plaintiff's cause of action sued

on, it shall be permissible in reply to allege any facts showing or
tending to show that said release . . . or other discharge was
fraudulently or wrongfully procured from plaintiff," presupposes
that there has been a release or discharge on which the minds of
the parties met, and that there was in fact a voidable contract ob-
tained by fraud; and in an action for damages based upon a breach
of the contract, if a release is pleaded as a defense and in reply it
is alleged that the release was obtained by fraud, the plaintiff,
if he has received anything of value for such release, must tender
back such consideration before he can avail himself of the provi-
sions of the statute to avoid the release; to avoid the release he
must not only rescind, but place the opposite party *in statu quo.*

3. ————: **Voidable Release: Election of Remedies: Statute.** Plain-
tiff assigned its contract with the defendant investment ·company
to the defendant trust company, and sued both companies for
damages, alleging that the investment company. breached the con-
tract, before its assignment, thereby furnishing plaintiff a cause
of action; the assignment was obtained by fraudulent representa-
tions, but was not void, but voidable, and therefore plaintiff has no
right of action against the investment company for a breach of the
contract as long as the assignment is not rescinded, and Section
1238 does not affect the validity of the assignment but merely
affords a remedy by which the plaintiff might avoid it. The de-
fendants claim that, because the statute permits a suit on the
original contract, although the assignment is only voidable, the
plaintiff is bound to pursue that remedy. *Held,* that an election
of remedies remains to plaintiff as it did before the enactment of
the statute, and he has an election of three remedies: First, he
may rescind the assignment and sue for the injury, in which case
he must return the consideration received; second, he may retain
the consideration, affirm the assignment, and seek damages for
fraud; and, third, he may sue in equity to rescind the assignment,
offering to return the consideration. Plaintiff was not bound to
pursue the first remedy, but its action for damages which accrued
to it by being defrauded out of its contract with the investment
company, in which fraud both companies participated, is maintain-
able, and in this case was the most appropriate, since the amount
of damages which arose from a breach of the contract is easily
ascertainable.

4. **CONTRACT: Breach: Time of Essence.** A provision in the contract
that paving bonds issued by the city were to be delivered "in ap-
proximately six months from this date in payment for the paving"
to the investment company, which was advancing money to the
contractor as the paving progressed and was to receive in payment
city bonds "upon delivery to it of a certificate by the city to the

effect that bonds to the amount will be issued and delivered upon the completion of the improvement," was a mere estimate, and the contractor's failure to deliver the bonds within six months was not a breach of the contract. And particularly was time for the delivery of the bonds to the investment company not of the essence of its contract with the contractor where said contract referred to his contract with the city which provided that the contractor "will not be entitled to receive payment for any portion of the aforesaid work until the same shall have been fully completed" and "then he shall receive pay in bonds against and upon lands liable to be charged with the cost" of the improvement, and further provided for extension of time for completion of the work if interrupted by weather, strikes, etc.

5. ———: Interpretation. A contract must be interpreted, not only by its terms, but by the subject with which it deals, and by the surroundings which show what the parties must have had in mind.

6. **FRAUD AND DECEIT: Pleading.** Allegations that the representations were made with the intention of deceiving plaintiff, and that defendants entered into a conspiracy for the purpose of cheating and defrauding plaintiff and that the representations were made in pursuance of the conspiracy, in the absence of a motion to make more specific and certain, are a sufficient charge of fraud and deceit. Likewise, in the absence of such motion, a charge that plaintiff believed, and was led to believe by defendant trust company, that plaintiff was entering into a bona-fide contract with the trust company and "in truth and in fact was inveigled into a contract for the sole use and benefit" of the defendant investment company, and that, acting upon the advice of the trust company, plaintiff assigned its contract with the investment company to the trust company, is sufficient allegations that plaintiff was deceived.

7. ———: Evidence: Oral Understandings. In an action for damages for fraud and deceit, based upon fraudulent representations, the fact that the transaction between the parties is evidenced by a writing does not prevent the introduction of parol evidence of the fraud, although it may show that the parties had an agreement different from that expressed in the writing.

8. ———: Instruction: Conspiracy: Acceptance by One Tortfeasor of Another's Favorable Instruction. Where one defendant offered and was given an instruction defining a conspiracy and telling the jury that they could not find for plaintiff unless there was a combination between defendants to defraud plaintiff, the other defendant, who made no objection to such instruction, but evidently desired to take advantage of it, because it increased plaintiff's burden, cannot be heard to complain of another instruction given

by the court of its own motion, telling the jury that in order to recover plaintiff must prove a combination between defendants to defraud plaintiff and that if they find against one defendant they must find against both.

9. **INTRUCTION: Law Question: Construction of Contract.** An instruction which allowed the jury to construe the contract sued on and to find therefrom that it was not the intention of the parties that it was to be performed within a definite time, does not harm the defendant, in that it submits a proposition of law, where the contract was rightly construed.

10. **FRAUD AND DECEIT: Misrepresentations: Promises: Concealment.** Misrepresentation of a present purpose, or of a present existing opinion, or of a present state of mind, where it is represented as an existing fact, is material, and where it induces one to part with his property, or to act to his injury, it is a misrepresentation of an existing fact and actionable, and is not to be considered as a mere promise. Likewise, concealment of an existing fact may amount to actionable fraud, the same as an actionable misrepresentation of a fact. And in this case there was not only concealment, but concealment accompanied with actual misrepresentations in material matters, by both words and conduct, which deceived plaintiff and induced it to assign its contract to one of the defendants in order that the other might escape liability for its breach thereof.

11. ————: **Instruction: Submitting Case as One for Breach of Contract.** In an action for fraud and deceit an instruction, covering the whole case, which tells the jury that if they find certain facts and that one of the defendants refused to recognize the obligation of its contract with plaintiff and declined to carry out its terms, it becomes liable to plaintiff for the loss sustained by reason of said breach, is not a submission of the case as one for breach of contract, where it does not authorize the jury to find for plaintiff on account of the breach, but simply states the breach as a fact in the chain of facts to be found in the action for fraud and deceit.

12. ————: ————: **Refusal: Covered by Others Given.** The court did not err in refusing to give an instruction asked by one of the defendants telling the jury that fraud and conspiracy to defraud are never presumed, but must be established by clear and convincing evidence, where it gave for the other defendant an instruction which fully covered the point.

Corpus Juris-Cyc. References: Appeal and Error, 4 C. J., Section 2620, p. 709, n. 26; Section 3010, p. 1025, n. 72, p. 1026, n. 73; Assignments, 5 C. J., Section 51, p. 885, n. 56; Section 105, p. 939, n. 98. Cancellation of Instruments, 9 C. J., Section 31, p. 1174, n. 14 New; Section 93, p. 309 Mo.—41.

1209, n. 36. Contracts, 13 C. J., Section 303, p. 394, n. 12, 13 New; Section 514, p. 542, n. 3d, p. 543, n. 32; Section 616, p. 598, n. 83; Section 783, p. 687, n. 40, 43. Evidence, 22 C. J., Section 1621, p. 1215, n. 65; Section 1623, p. 1217, n. 74. Fraud, 26 C. J., Section 13, p. 1071, n. 12, 22; Section 14, p. 1072, n. 23; Section 26, p. 1093, n. 95, p. 1096, n. 14; 27 C. J., Section 126, p. 17, n. 22, 23; Section 128, p. 18, n. 33, 42; Section 153, p. 34, n. 19; Section 181, p. 52, n. 37; Section 203, p. 69, n. 30; Section 219, p. 78, n. 11, 13, 17; Section 243, p. 94, n. 67 New. Municipal Corporations, 28 Cyc. p. 1597, n. 43 New. Pleading, 31 Cyc. p. 282, n. 20; p. 644, n. 68; p. 645, n. 73. Release, 34 Cyc. p. 1068, n. 85; p. 1071, n. 96. Trial, 38 Cyc. p. 1711, n. 19; p. 1720, n. 39.

Appeal from Jackson Circuit Court.—*Hon. Willard P. Hall*, Judge.

AFFIRMED.

*Long, Houston, Cowan & Depew, Leon M. Bailey* and *Miller, Carnack, Winger & Reeder* for Brown-Crummer Investment Company.

(1)   The court erred in overruling appellant's demurrer to the petition and in overruling the objection of appellant to the introduction of any evidence at the commencement of the trial, for the reason that the petition does not state facts sufficient to constitute a cause of action.   26 C. J. 1169; Lomax v. Electric Ry. Co., 106 Mo. App. 551; Thornburgh v. Jones, 36 Mo. 514; 26 C. J. 1175; Austin v. Barrows, 41 Conn. 287;   Hunt v. Simmonds, 19 Mo. 583; Epps v. Duckett, 284 Mo. 132; Remmers v. Remmers, 217 Mo. 541; Smith v. Mariner, 68 Am. Dec. 73; Cowan v. Fair Brothers, 118 N. C. 406, 54 Am. St. 733; Pile v. Bright, 156 Mo. App. 301; Matthews v. Eby, 149 Mo. App. 157; Younger v. Hoge, 211 Mo. 444; Mo. Loan Inv. Co. v. Trust Co., 175 Mo. App. 646; Bryan v. Ry. Co., 292 Mo. 535; Webb v. Ins. Co., 134 Mo. App. 576.   (2)   The contract between the Brown-Crummer Company and the Paving Company provided that the bonds in question were to be delivered by the Paving Company to the Brown-Crummer Company within approximately six months from July 29, 1919; and since it is admitted that no bonds were issued or delivered by the city within that time and no bonds were tendered

to the Brown-Crummer Company within approximately six months from July 29, 1919, there is no cause of action against the Brown-Crummer Company. 13 C. J. 527, 688; 2 Elliott on Contracts, sec. 1557; Edgerton v. Peckham, 11 Paige (N. Y.) 352; Waterman v. Burks, 144 U. S. 394; 4 Paige on Contracts, sec. 2109; 2 Elliott on Contracts, secs. 1514, 1515; Calloway v. Henderson, 130 Mo. 77; Watkins v. Donnell, 192 Mo. App. 640.  (3)  The court erred in overruling the demurrer to the evidence interposed by appellant Brown-Crummer Company at the close of all the evidence in the case.  Walsh v. Walsh, 285 Mo. 181; Jones v. Nichols, 280 Mo. 653; Garesche v. Mac-Donald, 103 Mo. 1; Hardwicke v. Hamilton, 121 Mo. 465; Warren v. Ritchie, 128 Mo. 311.  (4)  The court erred in admitting testimony as to the negotiations which occurred prior to the execution of the contract between the Paving Company and the bank on March 20, 1920, and the execution of the written assignment on the bottom of the contract between Paving Company and Brown-Crummer Company on July 29, 1919, because said contracts were complete and unambiguous on their face and the effect of such prior negotiations was to vary and contradict the express terms of such written contracts.  Rigler v. Reid, 186 Mo. App. 111; Official Catalogue Co. v. Weber, 130 Mo. App. 650; Tracy v. Union Iron Works, 104 Mo. 193; Jolliffe v. Collins, 21 Mo. 338; England v. Houser, 178 Mo. App. 70; 17 Cyc. 661; Halferty v. Scearce, 135 Mo. 428.  (5)  The court erred in giving Instruction 3c on its own motion.  13 C. J. 527; 2 Elliott on Contracts, secs. 1514, 1515, 1528; Calloway v. Henderson, 130 Mo. 77; Watkins v. Donnell, 192 Mo. App. 640.

*Bowersock & Fizzell* for Fidelity National Bank & Trust Company.

(1)  The petition states no cause of action.  (a) There can be no fraudulent destruction of a cause of action by or on behalf of the party against whom it exists.  Lomax v. Railroad, 106 Mo. App. 551; R. S. 1919, sec. 1238; Berry v. Railroad, 223 Mo. 358; Goodson v. Accident Assn., 91 Mo. App. 339; Logan v. United

Railways, 166 Mo. App. 490; Perry v. Hayes, 215 Mass. 296; Howland v. Corn, 232 Fed. 35; Porter v. Mack, 50 W. Va. 381; Revere Water Co. v. Winthrop, 192 Mass. 455. (b) There are no sufficient allegations of fraud in the petition. Cowan v. Fairbrother, 118 N. C. 406; Haverland v. Lane, 89 Wash. 557.; Ray County Bank v. Hutton, 224 Mo. 42; Younger v. Hoge, 211 Mo. 42; Estes v. Shoe Co., 155 Mo. 577. (c) Plaintiff had no cause of action under the contract of July 29, 1919, between it and the Brown-Crummer Company. Elliott on Contracts, sec. 1557; Waterman v. Banks, 144 U. S. 394; Vassau v. Campbell, 79 Minn. 167. (2) The court erred in admitting parol evidence of preliminary negotiations to vary the terms of the written contracts. Tracy v. Union Iron Works, 104 Mo. 193; Underwood v. Simonds, 12 Metc. 275; Wodoch v. Robinson, 148 Pa. 503; Dougherty v. Dougherty, 204 Mo. 228; Blakely v. Bennecke, 59 Mo. 193; Jones v. Shaw, 67 Mo. 667; Paris Mfg. & Imp. Co. v. Carle, 116 Mo. App. 581; Henderson v. Thompson, 52 Ga. 149; Towner v. Lucas' Executor, 13 Gratt. 705; Kreshover v. Berger, 116 N. Y. Supp. 20; Morgan's Assignees v. Shinn, 15 Wall. 105; Pacific Natl. Bank v. Bridge Co., 23 Wash. 425; 22 C. J. 1177. (3) The evidence was insufficient to go to the jury.

*Cooper, Neel & Wright* for respondent.

(1) The petition states a good cause of action. Jamison v. Copher, 35 Mo. 483; Hodgson-Davis Grain Co. v. Hickey, 200 S. W. 439; Scott v. Taylor, 231 Mo. 654. Section 1238 has reference to fraud as a *defense* which may be set up in a reply to prevent the defeat of the cause of action sued upon, and not to actions setting up fraud as the ground and basis of the suit. This statute adds nothing to the law as it stood prior to its passage. Fraud which rendered a release pleaded in an answer invalid could be set up in plaintiff's reply prior to the statute. Berry v. Railroad, 223 Mo. 358. And it is purely a matter of defense under this state of facts. Meeker v. Ry. Co., 255 S. W. 340. (2) Respondent is entitled to recover the benefits of its bargain upon the

same basis and with the same remedial rights it would have had, had there been no fraud. 20 Cyc. 134.; King v. White, 119 Ala. 429; Drake v. Holbrook, 78 S. W. 158; Krum v. Beach, 96 N. Y. 398; Bergeron v. Miles, 88 Wis. 397.; Hicks v. Deemer, 187 Ill. 164; Pierson v. Holdridge, 92 Kan. 365; Sweet v. Morrison, 103 N. Y. 235; Jamison v. Copher, 35 Mo. 483. (3) But two questions remain to entitle respondent to recover: first, the validity of the contract between respondent and Brown-Crummer Company.; second, the fraudulent procurement of an assignment thereof by appellants. St. Louis Assn. v. Delano, 108 Mo. 217. Breach of contract by plaintiff destroying its validity is an affirmative defense and must be affirmatively pleaded just the same as any other matter that contemplates that the claim once existed, but has been discharged by the acts of the parties. Rivers v. Plom, 163 Mo. 442; Ray v. Miller, 245 S. W. 584; Paxton v. Gast, 215 S. W. 515. When a contract between two parties refers to another contract, in respect to which their contract is made that both contracts must be read and construed together to get at the real meaning. Binz v. Hyatt, 200 Mo. 299; Fidelity Loan Co. v. Moore, 280 Mo. 315; National Bank v. Flanagan Mills Co., 268 Mo. 547. (4) The fraud resting in parol may be proved by parol evidence. 13 C. J. 395; Nauman v. Oberle, 90 Mo. 666; Horne v. Hotel Co., 184 Mo. App. 725; Judd v. Walker, 215 Mo. 312. The written contracts were merely steps in the proof of the fraud and of the resulting damages. 5 C. J. 1019; Wood v. Mathews, 73 Mo. 477; Lewis v. Dunlap, 72 Mo. 174; Wallace v. Wilson, 30 Mo. 335. Respondent's assignment to the bank constituted a transfer of a complete and absolute title to its contract with Brown-Crummer, subject to be defeated when all the municipal bonds were delivered to the bank; and in this respect it is similar to the delivery of a deed or bill of sale absolute on its face, but in reality a mortgage or collateral security. And in actions at law as well as in equity parol evidence may be received to show the true character of the transaction, and especially is this true where wilful and deliberate fraud is perpetrated to ob-

tain an undue advantage. Wood v. Mathews, 73 Mo. 477; Book v. Beasly, 138 Mo. 455; Georhardt v. Tucker, 187 Mo. 46; Stumpe v. Kopp, 201 Mo. 412; Spalding v. Taylor, 1 Mo. App. 34; Newell v. Kesler, 13 Mo. App. 189; Zittlosen Tent Co. v. Exchange Bank, 57 Mo. App. 19. (5) Complaint is made of Instruction 3c for the reason that said instruction told the jury that it must find a verdict against both defendants, if at all. This instruction is correct, because it is upon this theory, and this theory alone, that a recovery can be had. Complaint is also made of the refusal of the court to give Brown & Crummer's Instructions 2, 3, 4, 5 and 7, because said instructions permit a recovery against one of the conspirators and not against the other. A joint cause of action is alleged against both defendants in their relation of principal and agent, not only for conspiracy, but for a joint fraud practiced by them pursuant to that conspiracy, resulting in damage to plaintiff. The bank at all times was not acting independently for itself, but for Brown-Crummer. The contract it made with respondent was Brown-Crummer's contract; the advances therein provided for were advanced by Brown-Crummer and the notes executed by respondent to the bank were immediately indorsed by the bank to Brown-Crummer without recourse and handed through the bank as a cash transaction and not a dollar was advanced by the bank (record, 182). This deception was practiced right up to the time the bonds were finally issued and delivered to the bank, and in turn delivered by it to Brown-Crummer. It is well-settled law that one party cannot defeat recovery by the other on the ground of fraud by the contention that he had no personal knowledge of the fraud accomplished by false representations of his agent. Garretzen v. Duenckel, 50 Mo. 104.

WHITE, J.—The Metropolitan Paving Company, hereinafter called the Paving Company, brought this action against the defendants, the Brown-Crummer Investment Company, hereinafter called the Brown-Crummer Company, and the Fidelity National Bank & Trust

Company of Kansas City, hereinafter called the Fidelity Company, for damages, alleging that the defendants fraudulently conspired to obtain and fraudulently obtained from the plaintiff the assignment of a contract which plaintiff had with the defendant the Brown-Crummer Company.

In July, 1919, the plaintiff Paving Company, entered into contract with the city of Marysville, Kansas, to perform certain public work for that city, to be paid for in bonds to be issued by the city of Marysville when the work should be completed.

One Charles E. McCrae of Kansas City was employed by the city of Marysville, as consulting engineer in the construction of the improvement. He was also engaged in the bond-brokerage business in Kansas City. After the contract was awarded to plaintiff, Mr. McCrae undertook to assist in the disposition of the bonds to be issued in payment for the work. Finally a contract was concluded whereby the Brown-Crummer Company was to buy at par the bonds which the city of Marysville was to deliver to the plaintiff. The Brown-Crummer Company was to advance money to the plaintiff to pay expenses of the work while in progress before issuance of bonds. This contract between the plaintiff and the Brown-Crummer Company entered into July 29, 1919, forms the basis of this suit. The plaintiff claims it was breached by the Brown-Crummer Company, thereby furnishing plaintiff a cause of action; that the Brown-Crummer Company and the Fidelity Company conspired to defraud the plaintiff, and by fraudulent representations procured from it the assignment to the Fidelity Company of that contract, and the Fidelity Company, in consummation of the fraud, delivered the contract to the Brown-Crummer Company.

The plaintiff entered upon the work, and the Brown-Crummer Company advanced the first ten thousand dollars, in payment for the work, as it advanced. Another ten thousand dollars was advanced to the plaintiff by McCrae.

Evidence showed that the work dragged, and early in February, 1920, the Brown-Crummer Company complained that the bonds could not be delivered in the time provided in its contract with plaintiff.

Correspondence ensued between the Brown-Crummer Company and McCrae, and February 11, the Brown-Crummer Company wrote to McCrae:

"While we can appreciate the fact that the causes of the delays which have defeated the fulfillment of the contract covering the issuance and delivery of the three hundred-odd thousand City of Marysville Kansas Street Improvement Bonds *were beyond the control of the contractor,* still we cannot assume responsibility therefor, and *shall consider ourselves released from all obligations under the contract* which specifically provided for the delivery of said bonds within six months and in ample time to have enabled us to have marketed them prior to the taxing period of March 1st."

Thereafter several conferences occurred between Mr. McCrae, Mr. Davis, president of the plaintiff, and Mr. Dolman, attorney for the plaintiff, on the one side, and Mr. Crummer and Mr. Brown, representing the Brown-Crummer Company, on the other side.

Mr. Crummer and Mr. Brown refused to recognize the binding force of the contract; claimed that the plaintiff, by not being able to deliver the bonds in approximately six months, had violated the contract, and the Brown-Crummer Company was thereby relieved from purchasing the bonds. The representatives of the plaintiff insisted that the contract did not require delivery of the bonds at any specified time; that they were to be delivered when the work should be completed, which depended upon many things. During these conferences the Brown-Crummer people complained that the bonds were not as salable after the first of March as they were prior to that date, and they could not afford to carry on the contract and purchase the bonds at the rate at which they had agreed to take them, but proposed that, if the plaintiff would give them a bonus of ten or fifteen thousand dollars, they would enter into another contract by

which they would continue to furnish money and buy the bonds when the work was completed.

This situation it seems caused the work to be suspended. Mr. McCrae, and others representing the Paving Company, began negotiations with other parties to secure a sale of the bonds. It was necessary not only to have someone buy the bonds, but to furnish money to keep the work in progress until the bonds should be issued. Negotiations were conducted with the defendant, the Fidelity Company, and March 20th that company entered into contract with the plaintiff whereby it agreed to buy the bonds at ninety-six cents on the dollar and accrued interest, and to furnish money to pay for the work as it progressed.

In negotiating this contract the Fidelity Company made it a condition that the Paving Company should assign to it, the Fidelity Company, the original contract which the Paving Company had with the Brown-Crummer Company. The assignment was accordingly made in these words:

"Kansas City, Mo., Mch. 20, 1920.

"For value received we hereby assign, transfer, and set over to Fidelity National Bank & Trust Company all our interests and rights of action arising under the foregoing contract."

The plaintiff introduced evidence to show that the Fidelity Company had no real beneficial interest in the contract which it had just made with the plaintiff; that on the same day the Fidelity Company made a contract with the Brown-Crummer Company by which the Brown-Crummer Company was to buy the bonds, to furnish the money, and to perform all the contract which the Fidelity Company made on that day with the plaintiff. The evidence showed that the Brown-Crummer Company did in fact furnish all the money and pay for the bonds according to the terms of that contract; that the Fidelity Company furnished no money except for the length of time checks and drafts should be cashed by the Brown-Crummer Company. It was further shown that Mr.

Crummer, representing the Brown-Crummer Company, was in Kansas City, March 20th, when the contract was entered into, in the same building where negotiations were being conducted between Mr. Martin, representing the Fidelity Company, and Messrs. Dolman and Davis and others, representing the plaintiff; that Martin would confer with representatives of the plaintiff and go out from time to time and return to continue the negotiations. The evidence tended to show that each time he went out he consulted with Mr. Crummer. Before closing the arrangement he agreed with Mr. Crummer that as part of the arrangement he would procure from the plaintiff the assignment of the original contract which the plaintiff had with the Brown-Crummer Company. Mr. Martin, of the Fidelity Company, before he would enter a contract to purchase the bonds, insisted upon a transfer of the original contract between plaintiff and the Brown-Crummer Company. He told Mr. Davis and others that it was necessary to have that contract out of the way for the protection of his company against litigation which might ensue between the plaintiff and the Brown-Crummer Company, and that contract must be under his control until after the bonds were delivered, and the matter was entirely complete. Mr. Dolman and Mr. Davis, representing the plaintiff, informed Mr. Martin that the Brown-Crummer Company had breached its contract, was liable to the plaintiff for such breach, and on that account plaintiff intended to sue it, but finally agreed to assign and deliver the contract to the Fidelity Company on condition that it would be returned to plaintiff as soon as the delivery of the bonds was complete. The evidence tended to show that Mr. Martin had no intention of returning the contract; that he did not desire it for the purpose of his own protection, but for the purpose of delivering it to the Brown-Crummer Company; that it was immediately delivered to that Company, and passed beyond his control.

The evidence further tended to show that the Fidelity Company never would have entered into contract

with the plaintiff for the purchase of the bonds unless the Brown-Crummer Company had been behind it, and had already agreed to perform the contract for it; that in fact the contract which the Fidelity Company made with the plaintiff, March 20th, was made for the benefit of the Brown-Crummer Company.

The evidence further showed that those representing the plaintiff knew nothing about the Brown-Crummer Company's interest in the transaction, or that Mr. Crummer was near when the negotiations were going on, but they entered the contract in full faith and confidence that they were dealing with the Fidelity Company by a contract in which the Brown-Crummer Company had no interest, and with the full intention of holding the Brown-Crummer Company for prior breach of plaintiff's contract with it.

The jury returned a verdict in favor of the plaintiff for $15,182.06, the amount proved to be the plaintiff's damage by reason of the failure of the Brown-Crummer Company to purchase the bonds according to the first contract, and therefore the value of the contract which, it is alleged by plaintiff, was obtained by fraud. From that judgment the defendants appealed.

I. It is first asserted by appellants that the assignment of the contract, which plaintiff had with the Brown-Crummer Company, to the Fidelity Company, if induced by fraud, was null and void and left plaintiff's

Void or
Voidable.

rights under the contract unimpaired; that plaintiff, therefore, had a right to ignore that void assignment, and to sue Brown-Crummer Company for breach of the contract. Lomax v. Railroad, 106 Mo. App. 551, and Section 1238, Revised Statutes 1919, are cited in support of that position.

The ruling in the Lomax case, on the facts stated, is unsound, and is in conflict with numerous rulings of the courts of appeals and of this court. The assignment, which the petition alleges and the evidence tends to prove was obtained by fraudulent representations, is set out above.

Undoubtedly that assignment is a contract, and under repeated rulings of this court it is not void, but voidable. [State ex rel. v. Stuart, 111 Mo. App. l. c. 492-493; Malkmus v. Cement Co., 150 Mo. App. l. c. 454-455; McCoy v. McMahon, 216 S. W. l. c. 772.] Judge GOODE in the Stuart case pointed out the distinction between a void and a voidable contract, and held the contract under consideration there voidable (l. c. 492-493): "The relator knew the contents of the instruments and, according to his own statement, objected to signing them, but was led to do so by a representation of Stuart concerning the assets of the estate. A release or acquittance *can be disregarded* when pleaded as a defense to an action at law, if it appears that the party who executed it was *misled as to its meaning or effect, or was incapacitated through mental infirmity, disease or otherwise, to make the contract.*"

If a party defrauded misunderstands the nature of the contract so that the minds of the parties never meet on its terms, it is void. But, if, understanding its terms, he is induced to sign it by fraudulent representations outside of its terms, it is voidable and must be set aside before the party defrauded can maintain an action upon it. [Malkmus v. Cement Co., 150 Mo. App. l. c. 454-455.]

In the McCoy case, supra, Judge J. T. BLAIR of this court had this to say: "Fraud in the *factum* renders the contract void. . . . Fraud in the treaty renders it merely voidable."

In this case there was no fraud in the *factum* because the plaintiff knew the contents and the effect of the assignment which it executed. The allegation and the proof are that by fraudulent representations the plaintiff was induced to execute the assignment; therefore it was voidable, but not void.

A void contract may be disregarded by either party. A voidable contract cannot be. [Och v. Railway Co., 130 Mo. l. c. 45.]

Now, see in what position the law, as thus stated, places the plaintiff. If the contract was void, Section

1238, Revised Statutes 1919, had no effect upon it, either substantially or as a matter of practice. If it was absolutely void the plaintiff could have sued on the original contract before the enactment of that statute, which added nothing to the remedy which the plaintiff already had. If the Brown-Crummer Company, in answer, had set out the assignment, the plaintiff under general denial in reply could have showed that there was no such contract; that the minds of the parties never met.

II. It is plain that Section 1238 does not purport to affect the validity of a contract. It provides that "whenever a release . . . or other discharge of the cause of action sued on shall be set up or pleaded in the answer in bar to plaintiff's cause of action sued on, it shall be permissible in reply to 'allege any facts showing or tending to show that said release . . . or other discharge was fraudulently or wrongfully procured from the plaintiff."

*Statute: Release.*

That presupposes that there has been a release or discharge on which the minds of the parties met; that there was in fact a contract obtained by fraud. Now what was the purpose of the statute? Judge GOODE in the Stuart case, supra, 111 Mo. App. l. c. 496, said this in regard to it:

"The statute in question first appeared in the Revision of 1899, and *as it dealt only with the remedy and not with the right,* affected the present cause. . . . The statute worked a radical change in the procedure to be adopted to rescind for fraud a settlement of the cause of action."

In the case of Althoff v. Transit Co., 204 Mo. l. c. 171, this court said: "Prior to the enactment of that section of the statute, such a release and discharge had to be set aside by a court of equity in a separate proceeding upon the ground of fraud, before commencing proceedings upon the original cause of action." See also Wessell v. Waltke & Co., 196 Mo. App. l. c. 582.

It was held by the St. Louis Court of Appeals in case of Roberts v. Central Lead Company, 95 Mo. App.

581, l. c. 596, that Section 1238 did not exclude the plaintiff's right to invoke the ancient jurisdiction of equity to cancel such instruments as that section contemplates. It is universally held, in an action for damages, where a release is pleaded in defense, and in reply it is averred that the release was obtained by fraud, that if the plaintiff has received anything of value for such release, he must tender back such consideration before he can avail himself of the provisions of the statute. [McCoy v. McMahon, supra; Malkmus v. Cement Co., supra; Wessell v. Waltke & Co., supra; Reed v. John Gill & Sons, 201 Mo. App. l. c. 460.] All the authorities last cited held that before a plaintiff can avail himself of the statute to avoid such a release, he must put the other party *in statu quo* by the tender of whatever he has received as a consideration for the release.

Those authorities elaborate the proposition at much greater length than permissible to incorporate here. They show conclusively that Section 1238 contemplates only a voidable contract of release or discharge and not a void one.

Also, it is too plain for argument that if the plaintiff's position is correct the assignment in this case is voidable and not void.

Further, from the language of the statute and its interpretation by this court and the courts of appeals, it is obvious that the plaintiff's remedy to avoid such a release is by rescission: he must rescind and put the opposite party *in statu quo*. [Loveless v. Cunard Mining Co., 201 S. W. l. c. 378.] The statute permits him to avail himself of such rescission in an action at law on the original cause, and applies only to the remedy and does not in any manner affect the substantive rights of the parties. It was said by this court in the case of Althoff v. Transit Co., 204 Mo. l. c. 171, that the purpose of the Legislature in the enactment of that section was not to change the law of accord and satisfaction, but, ''the clear intention was to avoid a multiplicity of suits by authorizing the fraud issue to be tried by the jury at the same

time and in the same case involving the original cause of action.'' The opinion in that case (l. c. 170) further holds that if the plaintiff would repudiate the settlement he must put the other party in the same condition he was in before it was made.

Thus we have the plaintiff in this position: it has assigned its contract with the Brown-Crummer Company to the Fidelity Company. This assignment, it alleges, was obtained by fraud. It is not void, but merely voidable, so that under the authorities considered and in the very nature of the case, the plaintiff's right of action against the Brown-Crummer Company for breach of contract is taken away by the assignment, as long as such assignment is not rescinded. Section 1238 does not affect the validity of the assignment, but merely affords a remedy by which the plaintiff might avoid it.

III. It is contended that because the statute permits a suit on the original contract, although the release is only voidable, the plaintiff is bound to pursue that remedy. The authorities cited above show just the contrary. The election of remedies remains to the plaintiff in such cases as it did before the enactment of that statute. The rule in regard to election of remedies in such case is stated in the case of Urtz v. Railroad, 121 N. Y. Supp. 879. The plaintiff who has been induced to release his cause of action has an election of three remedies: First, he may rescind the compromise and sue for the injury, in which case the consideration must be returned. Second, He may retain the consideration, affirm the compromise, and seek damages for the fraud. Third, He may sue in equity to rescind the release, offering to return the consideration.

*Election of Remedies.*

That certainly states the law as it has been recognized by this court. The plaintiff could bring a suit in equity to set aside the assignment; it could sue on the original cause of action, and, in reply to the answer, plead the fraud by which the release was obtained; or as in this

case, it could sue for damages which accrued to it by being defrauded out of its contract with the Brown-Crummer Company. [Wessell v. Waltke & Co., 196 Mo. App. 582; Parker v. Marquis, 64 Mo. 38; Whitlow v. Shortridge, 237 S. W. 834, l. c. 836.]

In the case last cited the St. Louis Court of Appeals thus stated the law, citing cases from this court: "A party who has been defrauded may, on discovering the fraud, rescind the contract by returning whatever of value he has received, and then bring an action at law . . . or he can keep what he has received and bring an action in tort for damages because of the fraud."

The plaintiff, through the fraudulent representations of the Fidelity Company was induced to assign to the Fidelity Company a valuable contract. The effect of the assignment was to vest title to the contract in the Fidelity Company. It might have rescinded and thus have become restored to its original position as owner of the contract, with its right of action for breach of it against the Brown-Crummer Company, but it had a right to elect, allow the defendants to keep the fruits of the fraud and sue them for damages on account of it. The measure of damages in that case manifestly was the value of its contract with the Brown-Crummer Company, out of which it was defrauded. That value was easily ascertainable; it was the difference between the price of the bonds named in the contract and the price plaintiff was obliged to sell them for.

Undoubtedly the plaintiff pursued the easiest proper way to obtain redress. The position of the parties had changed before the suit was brought. Apparently it would have been difficult, if not impossible, to place the Fidelity Company *in statu quo* so that the plaintiff might have a right to rescind and sue upon the original contract. Furthermore, here were two tortfeasors who combined to defraud the plaintiff. Both received the fruits of the fraudulent representations, and the plaintiff's cause of action arose against both. Complications arising in the necessity of showing the exact relation of

the parties in an action on the original contract made such an action difficult.

IV. The second ground on which the defendants claim plaintiff could not recover is that the plaintiff itself violated its contract with the Brown-Crummer Company, because it failed to deliver the bonds within six months. This on the theory that time was the essence of the contract, that plaintiff having failed to deliver the bonds within the time specified, had no cause of action against the Brown-Crummer Company, and therefore parted with nothing when it made the assignment of its contract to the Fidelity Company.

*Time of Essence.*

The very language of the contract shows to the contrary. Time was not of its essence. It shows that the parties had in contemplation the completion of the plaintiff's contract with the city of Maryville, as the time when the bonds should be delivered, for it provides that the Brown-Crummer Company is to buy the bonds, "which are to be legally issued and delivered *in approximately six months* from this date in payment for the grading, paving, curbing, guttering of certain streets *under contract let by said City of Maryville to the seller*" (the plaintiff). "The buyer agrees to advance and pay to the seller the amount of each and all estimates that may be furnished to the contractor on such work by the engineer for the city, *upon delivery to it of a receipt or certificate by said city to the effect that bonds to the amount will be issued and delivered to the holder thereof upon the completion of the said improvement or improvements, said estimates to be* made every two weeks or every thirty days as said engineer may determine during the progress of the work."

This reference to the plaintiff's contract and the work for which the bonds were issued, shows it was a mere *estimate* that they were to be issued *"in approximately six months."* That is the time which the parties supposed would be required before the work would

309 Mo.—42.

be completed because they were to be issued in payment for the work. It is merely descriptive. The contract of the plaintiff with the city of Maryville, referred to in the plaintiff's contract with the Brown-Crummer Company, contains the following:

"MANNER OF PAYMENT.

"14. And the said party of the first part further agrees that he will not be entitled to receive payment for any portion of the aforesaid work or materials until the same shall have been fully completed in the manner set forth in this agreement and accepted by the Mayor and Council. And that he will then receive pay according to the above schedule of prices, in bonds against and upon the lands liable to be charged with the cost thereof, as provided by law, according to the charter and ordinances of said city and that his receipt therefor shall be in full of all claims against Marysville account of said work."

The contract further provides for extension of time for completion of the work if interrupted by weather, strikes, etc.

A contract must be interpreted not only by its terms but by the subject with which it deals and by the surroundings which show what the parties must have had in mind. It cannot be contended that the Brown-Crummer Company had any idea that the plaintiff had control of the issuance of the bonds. It cannot be contended that its officers did not know, when they signed the contract with the plaintiff, that the bonds could not be issued until the work was completed; that the city of Marysville alone would determine when they should be issued, and that "approximately six months" was the supposition or estimate of the parties as to when that would be accomplished. [13 C. J. 687; Lane v. Nunn, 243 S. W. 427, l. c. 430.]

The evidence shows that Mr. Crummer, in the talk about when the bonds were to be issued, said he knew the law of Kansas and would see to that, indicating that he knew more about when they could be delivered than plaintiff's officers did.

Under the contract the Brown-Crummer Company was to advance money to the plaintiff as the work progressed. The first estimate of $10,000 was so advanced, and the Brown-Crummer people received from plaintiff a receipt, which contained an assignment of bonds to that amount, and uses these words: ". . . And we do hereby authorize and empower the said Brown-Crummer Company to receive and receipt for the above mentioned bonds to the city of Marysville, Kansas, when the said Metropolitan Paving Company shall be entitled to such bonds as contractor," etc.

Thus the parties interpreted the contract as if time were not of its essence.

Not only the terms of the contract and the subject to which it relates, but all the surroundings show that in the minds of the parties time was not of the essence of the contract.

Mr. Crummer testified that bonds were not salable after March first, 1920. If he had had that in mind when the contract was made he would have put that limit in the contract instead of "approximately six months," which, under the circumstances, might mean seven months, or more, bringing the date to March first, 1920, or after.

The plaintiff and the plaintiff's officers and attorneys, believing that they had a cause of action against the Brown-Crummer Company for breach of contract, intending to bring suit for such breach and to retain control of the contract, thinking they were dealing with the Fidelity Company alone and that the Brown-Crummer Company had no interest whatever in the deal, entered into the arrangement, while according to the evidence, Mr. Martin knew all the time that they had such intentions, expectations and purposes, and thought they were dealing only with the Fidelity Company; they would not have gone into the arrangement with the Fidelity Company had they known the facts. All of this certainly constitutes actionable fraud. Mr. Davis testified that he relied upon the statements made by Mr. Martin, and was induced by them to sign the contract and enter into

the arrangement with the Fidelity Company, and after the bonds were sold and the contract completed and he had demanded his contract, for the first time he learned it had been delivered by the defendants to the Brown-Crummer Company; that the Brown-Crummer Company was interested in the deal, and that it had put every dollar into the arrangement.

V. It is further said that in several particulars the petition fails to state a cause of action. A general demurrer was filed to the petition, which was over-ruled, but no other objection was presented, and it was not moved that it be made more definite or specific. The petition alleges many other things:

Pleading.

"The Brown-Crummer Company, and with the intent and purpose of unlawfully and fraudulently procuring an assignment thereof without any consideration therefor, conspired and fraudulently combined and agreed between themselves that said defendant, Fidelity National Bank & Trust Company, should make the said contract, which it did make with said plaintiff, *thereby pretending to make the same for its own use and benefit when in truth and in fact, it was making the same on behalf of and for the use and benefit of said defendant, The Brown-Crummer Company,* and that in requiring and demanding an assignment of said plaintiff's contract with said defendant, The Brown-Crummer Company, *for the pretended purpose of securing it against any delay* in the issuance of said municipal bonds which might arise over any litigation relative to said contract between plaintiff and said defendant, The Brown-Crummer Company, *it was in truth and in fact acting for and on behalf of said defendant, The Brown-Crummer Company,* for the fraudulent purpose of cheating and defrauding and of assisting said defendant, the Brown-Crummer Company, to cheat and defraud said plaintiff out of the benefits accruing to it by the terms of said contract and of obtaining through said deceit and fraudulent devices the said municipal bonds, for the sole use and benefit of said

defendant, The Brown-Crummer Company, at a less
price and a higher rate of interest, for advances made
during the progress of said work, than was provided in
and by the terms of said contract between plaintiff and
said defendant, The Brown-Crummer Company.''

It is argued that there is no charge in the petition
that the representations were made with the intention
to deceive the plaintiff; that is sufficiently stated in the
part of the petition quoted above; in addition to that it is
alleged that the defendants entered into conspiracy for
the purpose of cheating and defrauding the plaintiff and
that the representations were made in pursuance of that
conspiracy; in the absence of any motion to make more
specific and certain, that is sufficient.

It is further argued that it is not alleged that the
Paving Company was deceived. The petition states that
plaintiff believed, and was led to believe by defendant
Fidelity Company that it was entering into bona-fide
contract with the Fidelity Company; that ''it was in
truth and in fact inveigled into a contract for the sole use
and benefit of the defendant, the Brown-Crummer Com-
pany.'' It is further alleged that, acting upon the advice
of the Fidelity Company, plaintiff made the assignment.
In the absence of any motion to make more definite and
specific these allegations are sufficient to show that the
misrepresentations were made with the intention to de-
ceive, that the Paving Company was deceived and relied
upon the misrepresentations, and was induced by them
to enter the contract. By a motion to make more definite
and certain the defendants, if they so desired, were en-
titled to have the cause of action stated with precision,
definiteness and directness, but so long as a cause of
action was stated in the petition it was good against a
general demurrer and any lack of definiteness could be
taken advantage of only by motion. [Stonemets v. Head,
248 Mo. l. c. 252.] The petition was sufficient to meet the
objections urged against it.

VI.  Appellant claims that the court erred in admit-
ting testimony of negotiations between the plaintiff and

**Parol Testimony.** the Fidelity Company on the ground that such prior negotiations were merged into the written contract which was afterwards entered, and the evidence tends to modify the words of the written contract.

This is an action for fraud. The plaintiff seeks to recover on account of fraudulent representations, and the fact that the transaction between the parties is evidenced by writing does not prevent the introduction of parol evidence of the fraud, although it may show the parties had an agreement different from that which was thereafter reduced to writing. [27 C. J. 52; Lead & Zinc Mining Co. v. Webster, 193 Mo. 351, l. c. 363; Horne v. Hertel Co., 184 Mo. App. 725; Judd v. Walker, 215 Mo. l. c. 335.]

As these authorities show, the rule that all prior parol negotiations are merged into a written contract does not apply where the contract was induced by fraud.

VII. Error is assigned to the action of the court in giving Instruction 3c, on its own motion, in which the court told the jury that the plaintiff sought **Conspiracy: Instruction: Waiver.** to recover on the ground of conspiracy between the defendants to defraud the plaintiff, and in order to recover the plaintiffs must prove a combination between the defendants, and the jury could not find against the defendants unless they found such an agreement, and that if it found against the one defendant it must find against both. It is argued by the Brown-Crummer Company that the jury might have rendered a verdict against the Fidelity Company for alleged fraud of Mr. Martin, representing that company, without connecting the Brown-Crummer Company with that arrangement.

The Brown-Crummer Company is not in position to urge this objection to Instruction 3c, because the Fidelity Company offered Instruction 3, which was given by the court without objection on the part of the Brown-Crummer Company. That instruction defined a conspiracy

and told the jury that they could not find for the plaintiff unless there was a combination between the defendants to defraud the plaintiff. Instruction 3c merely directs the jury as to the necessary effect of such a finding. If there could be no verdict for the plaintiff without finding a conspiracy, then plaintiff had a right to a verdict against both, if against either. The Brown-Crummer Company in its motion for new trial assigned error to the giving of Instruction 3c on the court's own motion, but did not object to the giving of Instruction 3, offered by its co-defendant. Evidently it desired to take advantage of the effect of that instruction because it increased the burden of the plaintiff, and being willing to take advantage of that instruction it must suffer the consequences that necessarily follow. Having failed to object to that Instruction 3, in its motion for new trial or elsewhere, it must be presumed that the Brown-Crummer Company approved it, and having approved it, it is not in position to object to the more explicit instruction covering the same subject.

VIII. Appellant assigns error to the giving on behalf of plaintiff of Instruction No. 1, which covers the whole case, and authorized a verdict for the plaintiff on finding certain facts. It is first objected that this instruction allowed the jury to construe the contract between the plaintiff and the Brown-Crummer Company, because the jury were authorized to find that it was not the intention of the parties that the bonds should be delivered in approximately six months. No doubt this did submit a proposition of law to the jury, but the defendant is not harmed by incorporating that in the instruction because above we have held that the contract should be so construed, and the finding by the jury that it should be so construed would not affect the result nor prejudice the defendant.

**Proposition of Law.**

IX. It is contended that the alleged fraudulent representations in this case were mere promises and not misrepresentations of existing facts, and for that reason

plaintiff has no cause of action. It is true that a promise to do a certain thing, with a present intention not to do it, is not actionable. [Younger v. Hoge, 211 Mo. 444; Shoup v. Tanner-Buick Co., 245 S. W. l. c. 366; Bryan v. Railroad, 292 Mo. l. c. 544; Cerny v. Paxton, 10 L. R. A. (N. S.) 640, and notes.] But it has been held that a state of mind may be misrepresented and thus constitute a misrepresentation of fact. [26 C. J. 1093.] For instance, it was held by this court in Stonemets v. Head, 248 Mo. l. c. 265: "The existence of an opinion may be a fact material to the proposed transaction, and a statement that such an opinion exists becomes an affirmation of a material fact, and if untrue, it is a misrepresentation."

*Fraudulent Representations.*

In the Shoup case, supra, l. c. 366, it is said that "where representations do not relate so much to a future event as to existing facts, conditions or arrangements on which an expectation of that event may be founded, they are not to be regarded as merely promissory."

A false statement of a present purpose may be a misstatement of a fact. Where a purchaser of a lot represented to the seller that he wanted it for the purpose of building a house, whereas in fact he wanted it for the purpose of building a garage upon it, it was held an actionable misrepresentation of a fact. [Adams v. Gillig, 199 N. Y. 314.] False representations as to present love and affection are held to be actionable. [Douthitt v. Applegate, 33 Kan. 395.] See also City Deposit Bank v. Green, 138 Iowa, 156; Gale v. McCullough, 118 Md. 287. In the last case cited a person represented to a landlord that the proposed lessee wanted the property for his own residence, and the landlord thus was induced to lease the property, whereas the lessee wanted it for the purpose of opening a thoroughfare for public use, and after obtaining his lease he put it to that use. It was held actionable fraud.

These cases show that the misrepresentation of a present purpose, or of a present existing opinion or a present state of mind, where it is represented as an exist-

ing fact, is material, and when it induces one to part with his property, or to act to his injury, it is a misrepresentation of an existing fact and actionable.

Concealment of an existing fact may amount to actionable fraud, the same as an actionable misrepresentation of a fact. [Hayes v. Delzell, 21 Mo. App. 679; McAdams v. Cates, 24 Mo. 223; Cecil v. Spurger, 32 Mo. 462; Morley v. Harrah, 167 Mo. 74, l. c. 80.] On the page last cited this court said: "The willful and conscious suppression of the truth under such circumstances is as blameworthy as the willful and conscious expression of an untruth." [Wann v. Scullin, 210 Mo. l. c. 487.]

In Bank of North America v. Crandall, 87 Mo. l. c. 208, this court, in speaking of fraudulent misrepresentations, used this expression: "And the misrepresentation is not confined to words, or positive assertions; it may as well consist of deeds, acts or artifices to mislead."

In the light of these authorities let us examine what the representations were in this case:

Mr. Martin, representing the Fidelity Company, told Mr. McCrae and others, representing the plaintiff, that it was necessary for his bank to have the contract between the plaintiff and the Brown-Crummer Company. When Mr. Davis, representing the plaintiff, said that if he assigned the contract he wanted it back, Mr. Martin replied that he didn't "give a darn what happened" after he got the bonds, and that he wanted to hold it to prevent litigation over the bonds. While negotiations were going on between the plaintiff's representatives and Mr. Martin representing the Fidelity Company, the original contract caused a great deal of discussion. Mr. Davis insisted that he expected to sue the Brown-Crummer Company for breach of the contract and he did not want to part with it. Mr. Martin assured him that it was necessary and that the money would not be advanced unless the contract was assigned; he wanted to be sure that nothing would be done on that old contract until after the bond issue had been made and floated, and the deal between the Fidelity Company and the plaintiff closed. He put

it this way to Mr. Dolman, attorney for the plaintiff: he wanted to be sure there would be no litigation; that he would not advance a lot of money to the contractor with the possibility of litigation to interfere with the delivery of the bonds. *He said that was all he wanted,* and that if the plaintiff would assign to them to hold until after the bonds were issued they would return the contract.

The above, according to plaintiff's evidence, are some of the varying expressions used by Mr. Martin to induce Mr. Davis, representing the plaintiff, to assign the contract.

While Mr. Martin was conducting these negotiations with Mr. Davis and Mr. Dolman, he was in touch with Mr. Crummer of the Brown-Crummer Company and, according to the evidence of Mr. Crummer himself, Mr. Martin first proposed to him, "If I can offer these bonds to you with the assignment and the release and you assuming the carrying burden, would you be interested in increasing your offer?" Crummer had previously offered ninety-five cents for the bonds. The assignment of the contract complained of occurred March 20, 1920. On that same day the Fidelity Company made the contract with the Brown-Crummer Company to sell the bonds to the Brown-Crummer Company which the Fidelity Company on that day agreed to purchase from the plaintiff. The evidence conclusively shows that the Fidelity Company had no intention of purchasing the bonds from the plaintiff until it had first reached an agreement with the Brown-Crummer Company to stand behind the purchase and that the Brown-Crummer Company stipulated as a condition of the purchase that the Fidelity Company procure an assignment of its former contract with the plaintiff. In fact by the arrangement the Fidelity Company became the agent of the Brown-Crummer Company; it was purchasing the bonds for the Brown-Crummer Company, and not for itself.

All this was concealed from the plaintiff and the plaintiff's representatives. They knew nothing about any interest of the Brown-Crummer Company in the trade

with the Fidelity Company. Mr. Davis, president of the plaintiff, said he had no idea the Brown-Crummer Company was acquiring the bonds, or the contract, otherwise he would not have made the assignment. On the other hand, Mr. Crummer testified that he would not have purchased and would not have agreed to take the bonds from the Fidelity Company without the possession of the original contract, a fact concealed from plaintiff.

The negotiations all through show there was no intention on the part of the Fidelity Company to purchase bonds for itself or that it had any purpose in procuring an assignment of the original contract for its own use, but that the purchase was made and assignment procured for the Brown-Crummer Company.

So, under the authorities cited above there was evidence tending to show the following fraudulent concealments and misrepresentations:

First, the Fidelity Company concealed the fact that it had already made an arrangement with the Brown-Crummer Company to take the bonds which it was purchasing from the plaintiff, and that the Brown-Crummer Company was the real party in interest in the transaction.

Second, Mr. Martin for the Fidelity Company represented that he wanted the contract for the purpose of protecting the Fidelity Company from litigation, whereas he had no such purpose in procuring the assignment of the contract, but he wanted it for the purpose of protecting the Brown-Crummer Company.

Third, Martin represented to Mr. Davis that the assignment of the contract was to the Fidelity Company and vested the title in the Fidelity Company, when in fact the assignment when executed was to the Brown-Crummer Company, because he had already an agreement with the Brown-Crummer Company to deliver it.

Certainly this was a sufficient concealment of existing facts and a misrepresentation of the entire situation, such as to give the plaintiff cause of action for injury caused to him by the misrepresentations. The misrep-

resentations were not confined to words, but the entire situation was misrepresented by acts of the Fidelity Company, and the Fidelity Company in doing so was acting for and on behalf of the Brown-Crummer Company.

It is further objected that the instruction submitted the case as one for a breach of contract of the Brown-Crummer Company, instead of an action for fraud and deceit. The instruction did tell the jury that if they found certain facts and that the Brown-Crummer Company refused to recognize the obligation of its contract and declined to carry out its terms with the plaintiff, it became liable to the plaintiff for loss sustained by reason of said breach. But the jury was not authorized to find for the plaintiff on that account; that was a fact in the chain of facts which were necessary to be found before they could find for the plaintiff. The instruction goes on to require a finding of all the facts regarding the relation of the parties, combination of the defendants and the alleged fraud perpetrated upon the plaintiff before they could find the issues for the plaintiff.

*Breach of Contract.*

Appellants make several other objections to the instruction, based upon the appellant's theory of the law, all of which is fully discussed and disposed of above. The instructions submit the case upon the theory of the plaintiff which we have approved above.

X.    The Brown-Crummer Company assigns error to the refusal of its instructions numbered 1 and 7, both of which are predicated upon a finding by the jury that the contract between Brown-Crummer Company and the plaintiff was delivered to the Fidelity Company without the knowledge of the Brown-Crummer Company, that such delivery was conditional, with a promise and agreement to return it to the plaintiff. The court modified Instruction 7, and told the jury in such instruction that if the Fidelity Company, through its agent, made any agreement to return the original contract after the delivery of

*Adding Necessary Word.*

the bonds, and refused to do so, such facts *alone* did not constitute fraud. The objection is to the use of the word "alone." The instruction would be erroneous without it because, as asked, Instruction 7 omits essential elements of the case.

XI.   Complaint also is made of the refusal of the court to give for the Brown-Crummer Company, Instruction 4, which told the jury that fraud and conspiracy to

Refusal of Instruction. defraud are never presumed, but must be affirmatively established by clear and convincing testimony, and the law presumes all men act honestly and that such presumption must be overcome by convincing testimony in order to establish an action for fraud. The Fidelity Company asked a similar instruction which the court modified and gave as Instruction No. 4. It sufficiently covers the point. Neither appellant has pointed out anything in Instruction No. 4, as given, which makes it insufficient to cover all that was sought by the defendants in the instructions asked.

The refusal of several other instructions is objected to, but they are all predicated upon the appellant's theory of the case that the plaintiff was not entitled to recover on the evidence.

The judgment is affirmed.   All concur, except *Ragland, J.,* who dissents.