THE STATE EX REL. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY v. CHARLES H. DAUES ET AL., Judges of St. Louis Court of Appeals.

Court en Banc, January 24, 1927.

1. **NEGLIGENCE: Wreck of Train: Unprecedented Storm: Demurrer to Passenger's Evidence.** The court does not err in refusing to sustain defendant's demurrer to the evidence, where plaintiff introduces evidence showing he was a passenger, that the train was wrecked and that he was injured, and defendant introduced evidence, supported by plaintiff's witnesses, tending to show that the storm which caused the collapse of the bridge and the consequent wreck of the train was so unprecedented as to constitute **vis major.** Whether the storm was the sole cause of the wreck is a question for the jury, and particularly so where there is evidence that the collapse of the bridge could have been averted by due care.

2. ———: ———: ———: ———: **Presumption.** From the plaintiff's evidence in chief that he was a passenger on defendant's train, that the train

was wrecked and that he was injured arises a substantial inference of fact, namely, that defendant had failed to exercise the high degree of care which the law imposes upon a common carrier, and that inference does not drop out of the case upon the introduction of evidence by defendant that the wreck was caused by an unprecedented storm. Plaintiff's evidence does not vanish when such defensive evidence is produced; the burden still remains on him of proving negligence, but being a passenger he is relieved only of the necessity of alleging and proving specific negligence. When plaintiff has made a prima-facie case by evidence tending to show that he was a passenger, that the train was wrecked and that he was injured, it is defendant's right to destroy his prima-facie case by producing evidence tending to show that the unprecedented storm or vis **major** was the sole cause of the wreck, and plaintiff's right in rebuttal to produce evidence tending to show that the storm was not the sole cause of the wreck, but that the accident could have been averted by the exercise of due care; and then it becomes a question for the jury to determine, upon all the evidence thus produced, whether plaintiff has established defendant's negligence.

3. ———: ———: ———: **Vis Major: Question for Jury.** Where plaintiff proves an injury, and defendant produces evidence tending to show that the injury was caused by some other agency, it becomes a question for the jury to determine whether such other agency was the sole cause of the injury; and this is the rule whether such other injury is an act of God, or vis **major,** or some other external cause.

4. ———: ———: ———: **Passenger: Instruction.** An instruction telling the jury that where a passenger, without fault on his part, suffers injury by the wrecking of a train, the burden is on the railroad company to establish that there has been no negligence on its part, and that the injury was occasioned by an inevitable accident or some cause which human precaution and foresight could not have averted, states a firmly established rule of law.

5. **DAMAGES: Release: False Representations: Claim Agent: Promise.** The rule that a forecast of what will happen in the future is merely promissory, and not the statement of an existing fact, does not apply where the matter involved is peculiarly within the speaker's knowledge. A false statement by the claim agent that the railroad was going into the hands of a receiver; that if plaintiff recovered judgment he probably would not be paid over ten cents on the dollar, and that if he would settle for one thousand dollars the amount would be paid at once, was not a promise or mere forecast, but implied a knowledge of a present financial condition, and being made by an agent in a better position to know the facts than was plaintiff is a sufficient ground of fraud to relieve the plaintiff of the settlement.

Corpus Juris-Cyc. References: **Carriers,** 10 C. J., Section 1426, p. 1026, n. 81; Section 1428, p. 1030, n. 7; Section 1471, p. 1080, n. 54 New. **Fraud,** 26 C. J., Section 25, p. 1090, n. 73. **Negligence,** 29 Cyc., p. 599, n. 45. **Release,** 34 Cyc., p. 1061, n. 21.

*Certiorari.*

WRIT QUASHED.

*E. T. Miller* and *A. P. Stewart* for relator.

(1) The ruling of the Court of Appeals that plaintiff was entitled to rely upon presumptive negligence arising under the *res ipsa*

*loquitur* rule, notwithstanding the evidence on the part of relator (corroborated by the evidence on behalf of plaintiff) established that the fall of the bridge and wreck of the train, and consequent injury to plaintiff, were caused by an outside agency, *vis major,* the unprecedented rainfall and flood, contravenes the rulings of this court in the following cases: Hurck v. Railroad, 252 Mo. 39; Evans v. Railroad, 222 Mo. 435; Hite v. Railway, 130 Mo. 132; Turner v. Haar, 114 Mo. 335; Davis v. Railway, 89 Mo. 340; Read v. Railroad, 60 Mo. 199; Sawyer v. Railroad, 37 Mo. 241; Guthrie v. Holmes, 272 Mo. 215; Burge v. Railroad, 244 Mo. 76; Tetwiler v. Railroad, 242 Mo. 178; Mockowik v. Railroad, 196 Mo. 550; Stack v. Baking Co., 283 Mo. 396. (2) The ruling of the Court of Appeals approving Instruction 1 given at the instance of plaintiff, which (a) directed a verdict upon a presumption of negligence, whereas the presumption of negligence passed out of the case upon the appearance of the facts in evidence, and (b) required relator to establish that the fall of the bridge was not caused by its negligence, whereas when relator's evidence (corroborated by that for plaintiff) established *vis major,* relator was prima-facie exonerated, and the burden was then on plaintiff to prove specific negligence, is contrary to and in conflict with the controlling decisions of this court in the cases cited above and the following cases: Moberly v. Railway, 98 Mo. 183; Morton v. Heidorn, 135 Mo. 608; Rodan v. Transit Co., 207 Mo. 392; State ex rel. v. Ellison, 268 Mo. 239. (3) The ruling of the Court of Appeals that the alleged false representation relied on by plaintiff to avoid the release, admittedly executed by him, related to an existing fact or condition, conflicts with the controlling decisions of this court in the following cases: Edwards v. French, 304 Mo. 194; McFarland v. Railway, 125 Mo. 253; Homuth v. Railway, 129 Mo. 629; Lewis v. Land Co., 124 Mo. 672.

*Douglass & Inman* for respondents.

(1) The ruling of the Court of Appeals that plaintiff, who was a passenger on a train that was wrecked by the fall of a bridge, was entitled to rely on the doctrine of *res ipsa loquitur* although the defendant comes forward with evidence that the fall of the bridge was caused by an outside agency, *vis major,* an unprecedented rainfall, does not contravene any ruling of this court. (a) Where a passenger is injured by the wreck of a train it is firmly established in this State that the proof of these facts makes a prima-facie case for the jury and the burden of relieving itself from liability is then cast upon the defendant; and whether or not the defendant has successfully met the prima-facie case is always a question for the jury. See Bond v. St. Louis-San Francisco Ry. Co., 315 Mo. 987, growing

out of this same accident. Simpson v. Railroad, 192 S. W. 739; Brown v. Railroad, 256 Mo. 522; Anderson v. Railroad, 290 Mo. 1; Gibson v. Wells, 258 S. W. 1; Cecil v. Wells, 259 S. W. 844. (b) The evidence of the defendant that there was an unusual rainfall was met by the plaintiff's rebuttal evidence by showing facts from which the jury could infer that the defendant's negligence was either the sole or a concurring cause of negligence in failing to make inquiry as to the character and extent of the rain; the failure of the trackmen to watch the track, as required by defendant's rules; that the piling under the defendant's bridge was rotten and defective. Authorities, supra. (2) Plaintiff's Instruction 1 is in conformity with the law as declared by the decisions of this court, cited above, and almost the identical instruction will be found in the following cases: Simpson v. Railroad Co., 192 S. W. 739; Price v. Railroad, 220 Mo. 435. (3) The fact that statements relate to the future will not preclude liability for fraud if such statements were intended and accepted as representations of a fact and involved a matter peculiarly within the speaker's knowledge. 26 C. J. 190; Berry v. Railroad, 223 Mo. 358; Wendell v. Orchard Co., 200 S. W. 747; Luchow v. Breweries Co., 183 S. W. 1125; Stonemets v. Head, 248 Mo. 243; Carroll v. United Rys. Co., 157 Mo. App. 247; Hoyt v. Bank, 247 S. W. 637; Huffmaster v. Tolando, 250 S. W. 470; 12 R. C. L. 446, sec. 90, 247, secs. 15, 16; Thomas v. Goodrun, 231 S. W. 571; Pulladin v. Farm Lands Assn., 225 Pac. 291.

WHITE, J.—*Certiorari* to the St. Louis Court of Appeals. One Hugh Whitlow recovered judgment against the St. Louis-San Francisco Railway Company, in the Circuit Court of the City of St. Louis for $6,430, for injuries received by him while a passenger on one of defendant's trains when it fell through a bridge. The defendant, relator here, appealed to the St. Louis court, where the judgment was affirmed in an opinion delivered by that court at the March term, 1926.

The evidence recited in the opinion of the Court of Appeals shows that the bridge which collapsed and caused the wreck was across a ravine known as Starland Creek, near Cape Girardeau. It was supported by piles, in groups, called bents, placed across the ravine. Six piles were in each bent. There were eleven bents placed about fourteen feet apart. The rails and ties were supported by timbers placed upon the top of those bents.

The train was south-bound. It ran on to the bridge about 3:55 A. M., September 1, 1922. A violent rainstorm had occurred during the night, flooding the ravine with a torrent which washed out bents numbered five and six, near the centre, leaving the bridge unsupported for a space of forty-two feet between the remaining bents.

The engine crossed the weakened part, but fell on the further side, and several coaches, including the one on which Whitlow was riding, fell to the bed of the creek, thirty-five or forty feet below, where he received his injuries.

The plaintiff introduced evidence to show the wreck of the train and his injury, and rested. The defendant then introduced a large volume of evidence to show that just before the wreck a heavy rain had occurred, of greater intensity and destructive force than people living in the neighborhood had seen for many years, and that the engineer in approaching the bridge could not see anything wrong with it.

The piles which gave way, it seems, were set on the bottom of the creek on solid rock, with sand and mud around them. The sand and mud were entirely washed away, along with the piles. There was no evidence that the piles were anchored in the bottom by cement or otherwise. The plaintiff further showed that the piling in bent number 7, was badly decayed, and in number 4 was decayed so that it had but four and one-half to six inches of sound timber. A number of other witnesses for plaintiff testified to the rotten condition of the piling. The piling was put in all the bents in 1918.

I. The relator complains of error by the Court of Appeals in holding that the demurrer to the evidence was properly overruled, because the plaintiff relied upon the presumption of negligence arising

**Presumption: Elimination.**  under the *res ipsa loquitur* rule, whereas defendant introduced evidence, supported by testimony also of plaintiff's witnesses, to the effect that the storm which caused the collapse of the bridge was so unprecedented as to constitute *vis major*. Relator relies upon the doctrine that a presumption of fact which arises from unexplained circumstances, falls out of a case when the proof shows what the facts really were. Therefore, it is argued that, when the collapse of the bridge was shown to have been caused by the act of God, the presumption of negligence arising from the unexplained catastrophe was taken away and there was nothing to submit to the jury.

Relator cites the case of Hurck v. Railroad, 252 Mo. 39. There, a case was made out by showing a wreck and a consequent injury, and the defendant offered evidence to prove that an unprecedented snow storm, constituting an act of God, was the cause of the wreck. The defendant offered and the court gave an instruction to the effect that the burden of proof was upon the plaintiff to show that the derailment of the car in which he was riding was due to some defect or imperfection in the track, or want of care of some of the defendant's employees. There was a verdict for the defendant. The trial court granted a new trial on the ground that the instruction

was erroneous, and that order was affirmed.  This court said (1. c. 49): ''Whether, therefore, the defendant had shown a condition of facts which exempted it from the presumption of negligence arising from the prima-facie case made by plaintiff, was a matter for the jury's determination.''  Instead of supporting the relator's position that case is against it.  It was a question for the jury whether, under the facts stated, an act of God had intervened to exempt the defendant from the liability.

The Court of Appeals in its opinion on that point, after pointing out the facts stated by a number of witnesses as to the condition of the piling, said: ''A number of other witnesses of the plaintiff testified to the rotten condition of the piling.''

The pilings that washed away were not seen by plaintiff's witnesses, but defendant's witnesses testified they were found some distance down the river and they were all broken.  The court said further that there was also ample evidence of specific negligence to take the case to the jury.

The latest ruling of this court was in the opinion handed down by Division One at the April term, 1926, Robert Bond v. St. Louis & San Francisco Railroad Company, 315 Mo. 987.  That case involved this same identical wreck.  From the statements in the opinion there, probably the same evidence as in this case was introduced as to the wreck, the storm and the condition of the piling.  Judge RAGLAND, in that case, wrote the opinion, and thus states the rule applicable to this point:

''The rule of law applicable in such cases as this, call it presumption of negligence, or *res ipsa loquitur,* does not purport to relieve the plaintiff of the burden of proving, in the first instance, that defendant was negligent; it merely relieves him of the necessity of alleging and proving specific negligence.  From plaintiff's evidence in chief in this case tending to show that he was a passenger on defendant's train, that the train was wrecked and that, as a consequence thereof, he was injured, a substantial inference of fact arose, namely, that defendant had in some respect failed to exercise that high degree of care which, under the law, it was incumbent upon it to exercise.  The facts so put in proof were therefore evidence of negligence on the part of the defendant.

''When defendant introduced its evidence tending to show that it was not negligent in any respect, but that the wreck of its train was caused solely by an act of God, plaintiff's evidence did not vanish or disappear.  It was still in the case, and it was sufficient to support an affirmative finding on the issue of negligence or no negligence.  Plaintiff's evidence tending to show negligence and defendant's tending to show the contrary, made, as of course, a case for the jury.''

II. It is further claimed by appellant that Instruction 1 given by the trial court was error, and the Court of Appeals was wrong in approving it. Judge RAGLAND in the Bond case, where a similar instruction was given by the trial court, thus answers that objection:

**Vis Major.**

"In the same case an instruction of the same purport as plaintiff's Instruction 1, as to the burden of proof, was after an elaborate review of the decisions in this State, unqualifiedly approved. It appears, therefore, that in this State the rule is firmly established that where a passenger, without fault of his own, suffers injury by the derailment or wrecking of the vehicle of carriage, the burden is upon the carrier 'to establish that there has been no negligence upon its part, and that the injury was occasioned by an inevitable accident or by some cause which human precaution and foresight could not have averted.' Logically such a rule cannot be merely one of procedure; it must be regarded rather as one of substantive law, adopted for the protection of passengers. It has been followed so long that its enforcement must now be considered a part of the public policy of the State."

Counsel for relator seemed to put the intervention of *vis major* upon a different footing from other agencies which may have been the cause of an injury. Where an injury has been proven by a plaintiff who sues, and the defendant produced evidence to show that the injury was caused by some other agency, it does not matter whether it was the act of God or something else; it becomes a question for the jury to say whether the external cause was the sole cause of the injury. In this case, as stated by the Court of Appeals, there was ample evidence tending to show that, although the storm was unprecedented, it was not the *sole* cause of the injury, and the accident could have been avoided by due care.

III. The defendant, relator, in the circuit court, set up in answer a release by plaintiff in consideration of a thousand dollars paid to him. In reply the plaintiff alleged that the release was obtained by fraud. The Court of Appeals stated that:

"While the defendant was in bed at the hospital the Claim Agent came to him in order to effect a settlement and this is what the plaintiff testifies as to what was said:

" 'He said that the Frisco was going into the hands of a receiver, and he advised me to settle. Then, on the sixth day, he made the same argument. He advised me to settle because the road was going in the hands of a receiver. He did not say when it was going into the hands of a receiver, but he said it was going into the hands of a receiver, and that I wouldn't probably get more than ten cents on the dollar, and he advised me to take $1,000 in settlement, and he

said that he had talked it over with the officials at the head office down town and that they had said that $1,000 would be all they would give me for my damages, and under those conditions I settled for $1,000.' "

One Mr. Cooper, a witness, was present at the time and he explained the conversation this way:

." 'He said it was going into the hands of a receiver and that if he didn't settle it would probably be two years before there would be a settlement, and then he would likely only get ten cents on the dollar, on account of the road going into the hands of a receiver. Mr. Harlan was trying to get Mr. Whitlow to settle for $1,000, and Mr. Whitlow objected to settling for that sum of money, but he finally, when Mr. Harlan told him that the road was going into the hands of a receiver, did accept $1,000. Mr. Harlan said the road was going into the hands of a receiver right away. When the check was given to Mr. Whitlow, Mr. Harlan told him to cash that check immediately, while it was good, before the road went into the hands of a receiver.' "

Relator says those representations were promissory in character and not statements of fact. The Court of Appeals in commenting upon that says: "In this case the means of the knowledge of the truth or falsity of the representation relied upon were peculiarly if not exclusively available to the defendant." And further: "There was no contention or suggestion made by the defendant in the trial court that there was a scintilla of truth in the representation." Also: "The representation that the defendant was going into the hands of a receiver and that if plaintiff did not settle he would likely get only ten cents on the dollar was not merely prophetic of a future event or an expression of opinion as to what might occur. . . . There was in the representation a clear implication that the receivership had already been determined upon and was then about to be accomplished, or that steps had already been taken which made it certain that the receivership would occur. This implication related to an existing fact. The representation also implied the existing condition that would ordinarily justify or bring about the event. It clearly implied existing financial embarrassment or insolvency, or some such existing condition as would jeopardize the collection of the plaintiff's claim for damages, and it implied knowledge on the part of the claim agent of such existing condition." And: "The claim agent denied positively that he made the representations attributed to him, but he did not testify to the truth or falsity of the representation."

It is claimed that this ruling is contrary to the latest rulings of this court, and several cases are cited. Among them Edwards v. French, 304 Mo. 194. In that case the representation was (l. c. 201):

316 Mo.—31.

"That they had a man or would procure a man who would loan defendant sufficient on the plaintiff's farm to make the cash payment of some $15,750, on the first of December, when the deal was to be closed." This, the court held, was merely promissory. It is plainly not the same kind of representation as in this case.

McFarland v. Railway, 125 Mo. 1. c. 278, cited by relator, was a suit for injuries. The representations complained of were made by the company's doctor, in procuring a settlement, when he stated that the plaintiff would be up and around in two weeks. The court held that was merely an expression of opinion, and said at page 279: "There is not the slightest evidence that the remark was knowingly false or made in bad faith."

In Homuth v. Street Railway Company, 129 Mo. 1. c. 644-645, the representation was made by a surgeon that "Mrs. Homuth would be up in fourteen days," and the court said there was nothing to show that it was not made in absolute good faith. It was simply the opinion of the physician. There is nothing to show that the physician who said the plaintiff would recover within a reasonable time did not think so, or had any reason to doubt so.

The rule that a forecast of what will happen in the future is merely promissory and not a statement of existing fact does not apply where the matter involved is peculiarly within the speaker's knowledge. [26 C. J. 1090; Wendall v. Ozark Orchard Co., 200 S. W. 1. c. 749; Stonemets v. Head, 248 Mo. 1. c. 252-253.] A statement may be promissory, or prospective, or an opinion in form, and yet state a fact.

The present representation was that the Frisco Railroad was going into the hands of a receiver, and the plaintiff probably would not get over ten cents on the dollar. That implied a financial condition of the Frisco Railroad such as would carry it into the hands of a receiver. The agent was in better position to know the facts about that than the plaintiff. That was equivalent to saying that he believed it from knowledge in his possession, when in fact he had no such belief or knowledge, for he swore that he didn't say it.

The relators pointed to no case in which the opinion of this court conflicts with that of the Court of Appeals on that subject.

The writ was improvidently issued and it is therefore quashed. All concur, except *Graves* and *Ragland, JJ.,* absent.