## JOHNSTON v. HAWKINSON.

### No. 11879.

Circuit Court of Appeals, Eighth Circuit.

April 23, 1941.

Rehearing Denied May 9, 1941.

Philip J. Close, of Kansas City, Mo. (Inghram D. Hook and Harry L. Thomas, both of Kansas City, Mo., on the brief), for appellant.

Maurice J. O'Sullivan, of Kansas City, Mo. (John M. P. Miller, of Kansas City, Mo., on the brief), for appellee.

Before WOODROUGH, JOHNSEN, and VAN VALKENBURGH, Circuit Judges.

WOODROUGH, Circuit Judge.

Upon the jury trial of this case in the District Court the defendant moved for directed verdict at the close of the plaintiff's evidence, the court sustained the motion and the action was dismissed on the verdict directed. The plaintiff appeals.

It was alleged in the plaintiff's petition (among other things not now relevant) that by the terms of a written long-term lease of the property known as 1331 Walnut Street in Kansas City, Missouri, attached to the petition, the defendant as lessee became obligated to pay the plaintiff $1600 a year as plaintiff's share of the rent in equal quarterly installments, but that defendant had not made full payments thereon since the 1st day of January 1929; in lieu thereof he had made partial payments so that defendant remained obligated in the sum of $6,100 for which plaintiff prayed judgment with interest and costs. The defendant denied the indebtedness and also pleaded that the plaintiff had asserted the claims set up in the petition for which defendant denied liability and there was a dispute between the parties but that on June 16, 1937, the dispute was settled and compromised. The plaintiff agreed to and did accept from defendant $1,000 in cash and two promissory notes of $500 each, delivered by defendant to plaintiff, and the further consideration of an agreement for reduction of the rent for a two-year period beginning October 1, 1937, to $800 a year payable quarterly, in full compromise and settlement of the claims sued on. The settlement agreement was reduced to writing, duly signed and delivered by plaintiff to defendant and defendant fully performed on his part. To which the plaintiff filed reply alleging that he was induced to sign said release by false statements of defendant which he believed and on which he re-

lied "that an adjustment on the rent called for by the lease was necessary, otherwise he (the defendant) would be forced into bankruptcy and that plaintiff would receive nothing at all * * * that he (the defendant) was about to take bankruptcy, that he was 'broke' and that it would be impossible to collect the rent which he owed by suit; that he could not be forced to pay any back rent due and owing except voluntarily; that he would make no payments whatever unless the obligation was reduced, and that the plaintiff would get nothing unless he signed and entered into the agreement on the terms proposed by defendant". That the representations were false, as plaintiff learned at about the time he began the suit, and that in truth defendant was worth in excess of $500,000, which he concealed by carrying cash accounts, securities and real estate in the names of straw and fictitious persons and other parties related to him or subject to his control, and that he had an annual income in excess of $40,000. That the release was void and without consideration and should be set aside and held for naught and that recovery should be awarded as claimed in the petition.

Upon the trial of these issues the plaintiff offered testimony sufficient to establish prima facie that he is the person entitled to recover two-thirds of the rental specified in the lease from defendant and that the amount due him from defendant under the terms of the lease was as alleged in the petition; that plaintiff had demanded the amount from the defendant and that the defendant had not then or ever denied that he owed it, and that there was not in fact any actual dispute between the parties concerning defendant's obligation. Plaintiff also adduced the testimony of Garrett Ellison and Edward Ellison, both men of standing in the community, and his own testimony, to the effect that in response to the demands of the plaintiff the defendant had made the statements and representations substantially as alleged in the plaintiff's reply, and the plaintiff testified that he believed the statements and that he was induced thereby to execute and sign the release (in the form of a letter sent by plaintiff to defendant) pleaded and relied on by defendant.

On the issue raised by the reply as to the falsity of the statements made by defendant in response to the plaintiff's demand for payment of his rent, the plaintiff had the deposition of the defendant taken

on April 6, 1940, and offered certain portions thereof as admissions made by defendant against interest and the same were properly received in evidence. Thereafter the defendant on his own behalf offered and the court received in evidence the entire deposition, and although it is not brought up with the record the court stated that either party could read any part he wished. It appears that the question was propounded to defendant, "What was your financial worth as of June, 1937?" and in response the defendant produced his income tax return for 1937, including schedules of assets. The return was the joint return of husband and wife but individual transactions of capital gains and losses by defendant himself were listed on the part of the return appearing in this record as Exhibit B. It shows that during the year he had sold items of his capital assets at the aggregate selling price of $41,528.50. A Mr. Snyder testified for plaintiff that he was in partnership with defendant and that as of June 16, 1937, the assets of the partnership were of the value of $29,000 and that the partnership had no indebtedness on that date. Mr. Roy A. Johnson, secretary of the Swedish American Saving and Loan Association, also testified for the plaintiff that as of June 16, 1937, there was stock of the association of record (insured certificates) standing in the name of defendant in the amount of $24,691.22, withdrawable 100 cents on the dollar.

The motion for directed verdict by the defendant at the close of the plaintiff's evidence was general, but the ground of decision clearly appears in the declaration of the court in connection with its ruling. The court was of the opinion that the plaintiff was precluded from having any recovery because he was estopped by the settlement and release of June 16, 1937. The court stated:

"The petition alleges and the evidence tends to support the allegations of the petition—so far there is no evidence to the contrary and I have no doubt that it was true, that the defendant said to the plaintiff's attorney that he could not pay any more than the amount agreed upon in the settlement and that he was broke, that he was contemplating bankruptcy, that he would go into bankruptcy if an attempt was made to force him to pay the full amount stipulated in the original lease.

"That is what he said. If that was untrue—if the plaintiff had proved that was untrue, that would be fraudulent representation. But what proof is there that anything Mr. Hawkinson said to the plaintiff was untrue?

"I have observed the evidence very carefully and have made inquiries myself in the trial to find out if there has been any showing here that anything Mr. Hawkinson said was not true. He said he was broke. Well, what proof is there that he was not broke? There is proof here that he had $26,000.00, approximately, stock of that value in the Building and Loan Association. There is proof here that he had a half interest in certain partnership assets which amounted to about $29,000.00. A half interest would be about $15,000.00, a little less. There is proof that he had assets of $40,000.00. But you do not show that a man is not broke by showing what his assets are. * * *"

Thus it appears that the court reached the conclusion that the plaintiff's proof that defendant had assets of large value was insufficient to sustain the issue on plaintiff's part because the plaintiff had not also shown that the defendant had no debts offsetting the assets. The court stated, "One can not prove that a statement that I am 'broke' is untrue until he proves not only the assets but the liabilities, and there is nothing here to show what Mr. Hawkinson's liabilities were."

■■ Our study of the record has persuaded that in construing the plaintiff's testimony the court failed to accord all reasonable intendments and inferences favorable to plaintiff. We think the inquiry propounded to defendant, "What was your financial worth of June, 1937?" clearly apprised the defendant that the matter inquired of was the matter involved in the lawsuit. He must have known that the question was directed to the allegation of the pleading that he had falsely represented himself to be "broke". When he answered the question as to what he was worth by producing the showing of assets, a fair and reasonable inference would be that such was his worth in the only sense relevant to the issue on trial. If by reason of undertakings or debts his real worth was different from what he disclosed, the facts were peculiarly within his knowledge and he should have made it known. He was not asked what his assets were, but what he was worth. If he meant his response to be only partial, he should have said so. The plaintiff's testimony on the issue was prima facie sufficient to falsify defendant's representa-

tion that he was "broke" and the ruling to the contrary was erroneous.

■ It is contended here for appellee that the trial court's declaration, "There is proof that he (the defendant) had assets of $40,000.00", is not fully borne out and that upon closer analysis of the testimony the amount should be reduced. But the exact amount was not controlling. It sufficed that defendant's financial worth was shown prima facie to have been substantial and sufficient in relation to the matter in controversy.

■ It is also contended for appellee that the judgment should be sustained because the plaintiff had not tendered back to defendant the payments received under the terms of the release. But on the plaintiff's evidence such payments only partially paid defendant's admitted obligation and larger sums were actually due plaintiff and plaintiff was under no obligation to return or tender the amounts paid back to defendant if the release was wrongfully obtained as plaintiff claimed. Plaintiff held no fruits attributable to the agreement and tender of what he did receive was unnecessary. Hettrick Mfg. Co. v. Service Clothing Co., Mo. App., 293 S.W. 466, 468.

The matter most seriously urged upon us is that the conduct, statements and representations attributed to the defendant were insufficient under Missouri law to justify avoidance of the release in this action even though they were false and the plaintiff believing them and relying thereon was induced and coerced thereby into giving the release. Our consideration of the Missouri decisions has convinced that the law in Missouri is to the contrary. The Supreme Court of Missouri has not sanctioned settlements wherein the debtor has utilized claims of insolvency or bankruptcy as a means of deception or coercion. State ex rel. St. Louis & San Francisco Ry. Co. v. Daues, 316 Mo. 474, 290 S.W. 425; Scott v. Parkview Realty & Imp. Co., 241 Mo. 112, 145 S.W. 48; Stewart v. Steinoff, Mo. App., 119 S.W.2d 76.

In State ex rel. St. Louis & San Francisco Ry. Co. v. Daues, 316 Mo. 474, 290 S.W. 425, a passenger who had been injured in a wreck of one of the Frisco trains brought action for his injury although he had given a release upon the railroad's payment of $1,000. Plaintiff alleged that the release had been obtained by fraud, and adduced evidence at the trial that he had been induced to accept the company's offer of settlement by the claim agent's statement that the offer should be accepted immediately since the railroad was likely to go into receivership at any time, and that if it did plaintiff could get no settlement for two years, and then only 10 cents on the dollar. The Court of Appeals, Whitlow v. St. Louis-San Francisco Ry. Co., 282 S.W. 525, held the allegation and proof sufficient to justify setting aside the release, the railroad being solvent, and the railroad appealed to the Supreme Court of Missouri. That court affirmed. It said [316 Mo. 474, 290 S.W. 428]:

"The rule that a forecast of what will happen in the future is merely promissory, and not a statement of existing fact, does not apply, where the matter involved is peculiarly within the speaker's knowledge. 26 C.J. 1090; Wendell v. Ozark Orchard Co. (Mo.App.) 200 S.W. [747] loc. cit. 749; Stonemets v. Head, 248 Mo. [243] loc. cit. 252, 253, 154 S.W. 108. A statement may be promissory, or prospective, or an opinion in form, and yet state a fact.

"The present representation was that the Frisco Railroad was going into the hands of a receiver, and the plaintiff probably would not get over 10 cents on the dollar. That implied a financial condition of the Frisco Railroad such as would carry it into the hands of a receiver. The agent was in better position to know the facts about that than the plaintiff. That was equivalent to saying that he believed it from knowledge in his possession, when in fact he had no such belief or knowledge, for he swore that he did not say it.

"The relators pointed to no case in which the opinion of this court conflicts with that of the Court of Appeals on that subject."

Scott v. Parkview Realty & Imp. Co., 241 Mo. 112, 145 S.W. 48, 54, was an action in which plaintiffs sought to recover a balance claimed to be due for work done in grading a certain tract of land belonging to defendant. The answer besides a general denial pleaded a settlement, accord and satisfaction; the reply was that the settlement was obtained by misrepresentation and duress and was without consideration. Plaintiffs had done excavation work under a contract which provided a set schedule of cost for haul and overhaul on which the opinion of an engineer was to be final. Considerable work was done and applying the schedule the cost ran into thousands of dollars; the engineer set a price which was not based on the contract schedule but

on a theory of his own, recognizing that plaintiffs would lose at least $50,000 by his ruling. Defendants refused to pay more than the price set by the engineer and by representations of the company's insolvency induced plaintiffs to accept payment on that basis and to execute receipt in full. Plaintiffs discovered that the company had undisclosed assets and brought suit for the contract price of the work. On appeal the Supreme Court of Missouri said:

"Defendant refused to pay what it conceded to be due, unless plaintiffs would accept the amount as in full satisfaction of all their claim. Plaintiffs yielded to the demand and signed the receipt, and defendant now pleads that that was a fair compromise, accord, and satisfaction. Plaintiffs in their reply say that defendant told them that, unless they accepted the amount tendered on the terms offered, it would pay them nothing, and they would have to sue; that the litigation would last at least three years, and by the end of that time the defendant would have disposed of its property and have no means to pay; that plaintiffs investigated the matter, and became satisfied that defendant was rapidly placing its property in such condition that they could not collect, by law, a judgment that might be obtained at the end of a long litigation, and so they accepted the tender and gave the receipt in full, but that afterwards plaintiffs discovered that notwithstanding the articles of association declared that the stock subscriptions had all been paid in full in cash, yet that some of the solvent stockholders in defendant corporation had not paid their stock subscriptions in full, and the amounts due by them would be sufficient to satisfy plaintiffs' claim, and upon that discovery they brought this suit.

"Part payment of a debt is not a discharge of the whole obligation, even when the creditor gives a receipt in full. But an exception to that rule is that, when there is an account between the creditor and debtor, sufficiently involved to afford the basis of a fair dispute as to the full amount due, and after full consideration the creditor yields to the debtor's view and agrees to accept the amount which the latter concedes to be due as in full satisfaction, and gives a receipt in full, it comes under the head of account stated, and is binding. If, therefore, it be conceded that there was ground for a fair dispute as to whether the plaintiffs were entitled to pay for their overhaul, estimated on what it actually was, or were entitled only to so much as the engineer estimated it would have been if done differently, and if the plaintiffs finally yielded the point and agreed to settle, and did settle, on the theory contended for by defendant, and if there was no other moving influence in the case, then the settlement was binding.

"But there was another influential fact in this case, according to plaintiffs' testimony, that forced them to this settlement. After the second session of the board of directors, and they had pronounced their ultimatum, one of the plaintiffs had a discussion of the subject with the president of the company, in which he gave the president to understand that they were going to sue for the amount they claimed to be due, and thereupon the president said it would suit the company just as well to be sued, because, if the company should settle then, it would have to borrow the money it proposed to pay; whereas a lawsuit would last three years or longer, and in the meantime, if the company was successful in disposing of its property, it would have enough to pay the whole of plaintiffs' claim, or else it would be insolvent, and plaintiffs would get nothing. Plaintiffs looked into the matter, and were satisfied that the prospect of insolvency of the company, foreshadowed by the president, was correct, and they yielded to defendant's demand and settled, giving a receipt in full.

"Ordinarily there is nothing wrong in a debtor, dealing with an honestly disputed balance of account, to say to his creditor: 'This is all I owe you; but I am not willing to pay it to you, and then leave you free to sue me for the balance which you claim. I will pay you this only on condition that you accept the amount in full satisfaction of your claim and receipt for it accordingly.' The presumption in such case is that, if the creditor is right in his claim, the law will give him satisfaction; therefore no wrong is done him. He is free to accept what is offered, or go to law, with confidence that in the end the law will give him what is right. But, if the debtor should take the occasion to represent to his creditor his financial condition as being such that, at the end of the lawsuit there would be nothing to satisfy the judgment, he would thereby introduce an element of coercion in his offer. The offer then, instead of being, 'Take this, or take what the law will adjudge to be your due,' would be equivalent to, 'Take this, or you will never

get anything.' A debtor who refuses to pay what he acknowledges to be due under those circumstances does not deal fairly with his creditor, and is not entitled to the advantage so obtained; if he knows that the probabilities are such that a lawsuit would yield his creditor nothing, the only honest course to pursue is to pay what he acknowledges to be due."

The court stated that in cases where there was no doubt of solvency, such as H. C. Pollman & Bros. Coal Co. v. City of St. Louis, 145 Mo. 651, 47 S.W. 563, there was no coercion to invalidate the settlement. It continued:

"Besides, there was, according to the plaintiffs' reply and their offer of proof, a concealment of available assets of the corporation by the president in his discussion of the subject with the plaintiffs, perhaps not an intentional concealment, but still a failure to disclose an important fact bearing on the very point then under discussion; that is, the indebtedness of solvent stockholders for their unpaid, or fictitiously paid, stock subscriptions. That was a material fact bearing on the question of fairness of this alleged settlement, and the court erred in rejecting the plaintiffs' evidence offered.

"It is argued that, because the representations of the president as to the prospective insolvency of the corporation were true, there was no fraud. But this is not a case of obtaining goods under false pretenses; it is the case of a debtor, professedly able then to pay what he acknowledged to be due, refusing to pay it, and coercing his creditor to execute a receipt in full by holding up to him the prospective insolvency of his company. If the alleged settlement was coerced under the circumstances which the plaintiffs' testimony tended to prove, it was not a fair settlement, and the plaintiffs are not bound by it. Whether it was so obtained, it is not for this court, nor was it for the trial court, to say; it was a question for the jury. The settlement was not a compromise because there was nothing conceded by defendant; it was not an accord and satisfaction, because there was no consideration to support it; and it was not a binding settlement, if it was obtained under the circumstances above indicated."

The Supreme Court reversed the judgment and remanded the case for a new trial.

In Stewart v. Steinoff, Mo.App., 119 S.W. 2d 76, 80, the defendant had made a similar representation; the court said, "* * *

there was also testimony of the plaintiff and other members of her family that the adjuster told plaintiff that the insurance company was about broke, and unless she took the $200 offered that she would get nothing. These statements were denied of course, but they were such statements of fact as to make an issue for the jury."

We think the necessary conclusion from the Missouri decisions (we find none in conflict with those quoted from) is that the plaintiff's prima facie proof of misrepresentation and coercion inducing the release relied on by defendant was sufficient to put defendant on his proof in respect to the release and that the court erred in giving the peremptory instruction to the jury on defendant's motion.

Reversed and remanded for new trial.