GEORGE JECK v. C. E. O'MEARA and CHEVROLET MOTOR COMPANY, a Corporation, Appellants.—107 S. W. (2d) 782.

Division One, June 30, 1937.*

---

*NOTE: Opinion filed at September Term, 1936, April 21, 1937; motion for rehearing filed; motion overruled at May Term, 1937, June 30, 1937.

*McCarthy, Morris, Smith & Sparrow* for appellants; *Warren E. Talcott* of counsel.

*Thompson, Mitchell, Thompson & Young, R. C. Coburn, R. Forder Buckley* and *White, White & White* for respondent.

BRADLEY, C.—Action for damages for alleged fraud and deceit. On a jury trial plaintiff had a verdict and judgment for $15,775.67 actual damages, including interest, and $10,000 punitive. Motion for a new trial was overruled, after a *remittitur* of $2500 of the punitive damages, and defendants appealed.

Defendants assign error (1) on the overruling of their demurrer to the petition; (2) on the refusal of their separate peremptory instructions, at the close of the whole case, for a directed verdict; (3) on instructions given for plaintiff and the refusal of instructions requested by defendants; (4) that there was no evidence to support a verdict and judgment for punitive damages; and (5) on an alleged excessive verdict.

Plaintiff alleged that the Chevrolet Motor Company of St. Louis was engaged in the manufacture, sale and distribution of Chevrolet cars in St. Louis, and that said company was the sole and exclusive manufacturer and distributor of such cars in St. Louis and Missouri generally; that defendant O'Meara was in the employ of said company as its zone manager, in St. Louis, and other parts of Missouri and part of Illinois; that as such zone manager, O'Meara "was authorized, or held himself out to be authorized, to be in charge of all sales to retail dealers engaged in selling" Chevrolet cars in his zone and that O'Meara was authorized, or held himself out to be authorized, to control and supervise all retail Chevrolet dealers in his zone; that all retail dealers in said zone had to have what is called a franchise from the Chevrolet Motor Company of St. Louis, in order to handle Chevrolet cars, and that such franchise was issued only upon the approval and recommendation of O'Meara, the zone manager; that by virtue of said franchise, supervision, control, etc., maintained by O'Meara as zone manager, the defendant Chevrolet Motor Company, the General Motors Holding Corporation, Motors Accounting Company, all belonging to the General Motors Group, supervised and controlled the sales, distribution, finances, advertising, business policy, management, accounts, bookkeeping system, etc., of all licensed retail dealers handling Chevrolet cars within said zone, and that included among the retail dealers so supervised, etc., was the Lindell Chevrolet Company, a retail dealer of Chevrolet cars, at 3949 Lindell Boulevard, St. Louis; that the Lindell Company had been engaged in selling at retail, Chevrolet cars and parts, under a franchise from the defendant, Chevrolet Motor Company, for some

time prior to June 15, 1931; that shortly prior to said date, O'Meara, for himself and as zone manager for the defendant Chevrolet Motor Company, for the purpose of inducing plaintiff to invest $15,000 in the capital stock of the Lindell Chevrolet Company, falsely and fraudulently represented to plaintiff:

''(1) That the said Lindell Chevrolet Company was its (the Chevrolet Motor Company of St. Louis) leading metropolitan dealer in the City of St. Louis; (2) that said Lindell Chevrolet Company was solvent, in good liquid financial condition, and was not financially embarrassed; (3) that the Lindell Chevrolet Company was doing a profitable business; (4) that the books, accounts and business matters of the Lindell Chevrolet Company were correctly and accurately kept; (5) that the Motors Accounting Company had and would audit and check the books, accounts, records and business matters of the Lindell Chevrolet Company, and had and would supervise the books, accounts, records and business matters of the Lindell Chevrolet Company; (6) that the records, books and accounts of the Lindell Chevrolet Company were true, accurate and correct, and their system of keeping the same sound, and that the statements furnished plaintiff by said Lindell Chevrolet Company were true, accurate and correct; (7) that the Motors Accounting Company prepared certain monthly reports of the Lindell Chevrolet Company and other retail dealers commonly called 'monthly forecasts,' which were submitted to the defendant, Chevrolet Motor Company of St. Louis, showing the true condition of the said Lindell Chevrolet Company from time to time; (8) that the plaintiff could not lose any money that he invested in the Lindell Chevrolet Company because the Motors Holding Company, by which was meant the General Motors Holding Corporation, existed for the purporse of taking over failing Chevrolet dealers so that the owners would not lose any money, and said General Motors Holding Corporation would come to the rescue of any retail dealer in financial trouble and the investors would not lose a dime; (9) that the plaintiff could not lose any money that he might invest in the Lindell Chevrolet Company because the said Motors Holding Company had never permitted a licensed Chevrolet dealer to fail in business, or the investors therein to lose their investment, and that such was the established and settled policy of the said Motors Holding Company; (10) that it would be impossible for the plaintiff to lose anything that he might invest in the Lindell Chevrolet Company because the Motors Accounting Company, a subsidiary of General Motors, kept a perpetual inventory and account for all dealers and made daily reports for these dealers to said C. E. O'Meara as zone manager of the Chevrolet Motor Company of St. Louis; and (11) that none of the officers or agents of the Lindell Chevrolet Company could expend more than fifty dollars ($50.00) for operating

expenses without the knowledge and consent of the defendant, Chevrolet Motor Company of St. Louis, and that by reason of said close supervision of the said Lindell Chevrolet Company by the Chevrolet Motor Company of St. Louis and the Motors Accounting Company, plaintiff's money would be safe and the business would prosper.''

Plaintiff further alleged that the defendants willfully and maliciously made the representations above set out; that these representations were false and untrue, and were ''recklessly made by the defendants as of their own knowledge, when in fact they did not know whether said statements were true or not, with the intention that plaintiff herein should rely and act thereon; and that said misrepresentations and statements were material and the plaintiff relied upon same and was thereby induced'' to invest $15,000 in the capital stock of the Lindell Company on June 15, 1931.

Plaintiff further alleged that the representations related to matters ''peculiarly within the knowledge of the defendants, and that the plaintiff, prior to June 15, 1931, had no knowledge of the established policies or practices'' of any of the companies mentioned.

He further alleged that the defendants, in making the representations ''with reference to the Motors Accounting Company and the General Motors Holding Corporation, misstated an existing state of mind, purpose or policy'' of said companies; that since plaintiff invested $15,000 in the capital stock of the Lindell Company, defendants have caused him to be reimbursed in the sum of $1000. Judgment was asked for $14,000 actual damages, with interest, and $50,000 punitive damages.

Defendants filed joint demurrer to the petition, alleging that it did ''not contain facts sufficient to constitute a cause of action against either defendant.'' The demurrer was overruled, exception saved, and defendants answered by general denial.

Defendants brief the assignment based on overruling the demurrer to the petition more on the charges of fraud, 8 and 9, that went to the jury, than on the whole petition. When the demurrer was ruled the whole petition was before the court and the demurrer was ruled on the petition as a whole, but we consider the demurrer from two view points, viz.: (1) Does the petition as a whole state a cause of action? and (2) do the charges submitted state a cause of action? It will be noted that the first, second, third, fourth and sixth alleged false representations relate to then alleged existing facts. If these allegations were true (and for the purpose of the demurrer we so consider), and plaintiff, proceeding with reasonable prudence, relied thereon, etc., then there is no room for the contention that the petition does not state a cause of action. We think that the demurrer, viewing the petition as a whole, was correctly ruled.

Are the charges of fraud submitted sufficient to constitute a

cause of action? The charges of fraud that went to the jury are 8 and 9, as stated. Defendants base their contention that the charges of fraud submitted are not sufficient to constitute a cause of action on the ground that they do not relate to past or existing facts, but to something that would happen in the future, that is, promissory in nature. Standing alone, the charges of fraud submitted do not relate to past or existing facts, but to what is to happen in the future, but plaintiff alleged that "the defendants, in making the misrepresentations with reference to the" Holding Company, "misstated an existing state of mind, purpose and policy" of said company, and as shown, plaintiff alleged that the representations, which included 8 and 9, "related to matters peculiarly within the knowledge of the defendants, and that plaintiff, prior to June 15, 1931, had no knowledge of the established policies or practices" of the Holding Company or other companies mentioned. As supporting the contention that the charge of fraud submitted, when coupled with other allegations, are sufficient to state a cause of action, plaintiff cites Collins v. Lindsay (Mo.), 25 S. W. (2d) 84; Metropolitan Paving Co. v. Brown-Crummer Inv. Co., 309 Mo. 638, 274 S. W. 815; State ex rel. St. L.-S. F. Ry. Co. v. Daues et al., 316 Mo. 474, 290 S. W. 425; Stonemets v. Head, 248 Mo. 243, 154 S. W. 108; Wendell v. Ozark Orchard Co. (Mo. App.), 200 S. W. 747; Luchow v. K. C. Breweries Co. (Mo. App.), 183 S. W. 1123.

In the Collins case plaintiff owned an undivided half interest in eighty acres of land, of the value of $250 per acre, subject to the life estate of her father (age about sixty) and subject to an encumbrance of $5000. Plaintiff and her father had had some disagreements and she left home and was living in Oklahoma. It was falsely represented to her that the father *intended* to let payment on the encumbrance default and let the land sell and that in such event her remainder interest would be wiped out. On such representations she executed a deed to her interest for $500. Later, and upon discovery of the false representation, she brought suit to set aside the deed. On trial the chancellor found for the defendants. Motion for new trial was sustained and the defendants appealed, and on appeal the action of the trial court, in granting the new trial, was sustained. The court said: "In this situation it was represented to her that her father intended to default in his payments for the purpose of bringing about foreclosure and sale, and moreover that her interest was in no event worth more than the price offered, $500. This, we think, was more than a mere expression of opinion or statement of something that would occur in the future. The statement that her father intended to default in his payments and bring about a sale meant, and was understood by plaintiff to mean, that he then had that intention; that such was then his state of mind, his present

design and purpose. As showing that plaintiff so understood Lindsay's statements, she testified on cross-examination that she signed 'under conditions . . . that arrangements were being made for the place to sell.' "

It will be noted in the Collins case that the court, in discussing the representations said that it was represented to plaintiff "that her interest was in no event worth more than the price offered, $500," and that she signed "under conditions . . . that arrangements were being made for the place to sell." These were matters relating to then existing facts.

In the Metropolitan Paving case, supra, the subject of a present purpose, a present existing opinion, present state of mind, pertaining to alleged false representations, is considered quite at length. Many cases are reviewed and there it is said: "These cases show that the misrepresentation of a present purpose, or of a present existing opinion or a present state of mind, where it is represented as an existing fact, is material, and when it induces one to part with his property, or to act to his injury, it is a misrepresentation of an existing fact and actionable."

State ex rel. St. L.-S. F. Ry. Co. v. Daues, supra, was in *certiorari* to quash the opinion of the St. Louis Court of Appeals in Whitlow v. St. L.-S. F. Ry. Co., 282 S. W. 525. The Court of Appeals held that a release the plaintiff signed did not, under the facts, bar recovery as a matter of law. In the Whitlow case the Court of Appeals said: "The representation that the defendant was going into the hands of a receiver and that if plaintiff did not settle he would likely get only 10 cents on the dollar was not merely prophetic of a future event or an expression of opinion as to what might occur. . . . There was in the representation a clear implication that the receivership had already been determined upon and was then about to be accomplished, or that steps had already been taken which made it certain that the receivership would occur. This implication related to an existing fact. The representation also implied the existing condition that would ordinarily justify or bring about the event. It clearly implied existing financial embarrassment or insolvency or some such existing condition as would jeopardize the collection of the plaintiff's claim for damages, and it implied knowledge on the part of the claim agent of such existing condition."

The present case on the charges submitted is clearly distinguishable from State ex rel. v. Daues. Note that "there was in the representation a clear implication that the receivership *had already been determined* upon . . . or that steps *had already been taken* which made it certain that the receivership would occur." (Italics ours.) So are the facts alleged in charges 8 and 9 distinguishable from the facts in the other cases cited by plaintiff, and we find no case support-

ing plaintiff's contention that 8 and 9 state a case of actionable fraud, even when coupled with the allegations as to present state of mind, policy, etc., and coupled with the allegation that the facts alleged in 8 and 9 were peculiarly within the knowledge of defendants, and plaintiff ignorant thereof. We do not think it necessary to review the other cases cited by plaintiff.

In Reed v. Cooke, 331 Mo. 507, 55 S. W. (2d) 275, it is said: "The real gravamen of plaintiff's complaint is that he was induced to buy the stock at $135 per share by the promise of defendants to thereafter effect his election as general manager of the bank at a salary of $300 per month, and to continue him in such position until the stock of the bank became worth and had a market value of $135 per share, but that he was not elected to that position, hence the damages claimed." The Reed case dealt principally with the question as to whether actionable fraud can be predicated on a promise as to what will happen in the future, when such promise is accompanied by a present intention of the promisor not to perform, and where such promise is made for the purpose of deceiving the promisee. Although such was the situation in the Reed case, recovery was denied, because the representations related to what was to happen in the future. In the present case the gravamen of plaintiff's complaint (so far as concerns the grounds submitted) is that he was induced to invest $15,000 in the Lindell Company on the representation that the Holding Company existed for the purpose of bringing new capital into failing Chevrolet dealers so that investors therein would not lose any money and that if he invested any money in the Lindell Company he would not lose a dime.

In ruling the *certiorari* case, State ex rel. v. Daues, supra, this court said: "The rule that a forecast of what will happen in the future is merely promissory, and not a statement of existing fact, does not apply, where the matter involved is peculiarly within the speaker's knowledge. [26 C. J. 1090; Wendell v. Ozark Orchard Co. (Mo. App.), 200 S. W. 1. c. 749; Stonemets v. Head, 248 Mo. 1. c. 252, 253, 154 S. W. 108.] A statement may be promissory, or prospective, or an opinion in form, and yet state a fact."

As stated, plaintiff alleged that the representations related to matters peculiarly within the knowledge of defendants, and that prior to June 15, 1931, plaintiff had no knowledge of the policy or practice of the Lindell Company, the Chevrolet Company, the Accounting Company, the Holding Company or any other company of the General Motors Group. Considering the grounds of fraud submitted, in connection with the allegation that the representations related to matters peculiarly within the knowledge of defendants, the question then is: Are the allegations submitted sufficient to state a cause of action? For the purpose of considering the demurrer,

we accept as true the allegations of the petition, but notwithstanding, we do not think that the grounds of fraud submitted are sufficient to state a cause of action. And this, not alone because of their promissory character, but because of their very nature. That the grounds of fraud submitted are promissory is of course conceded. In ruling the demurrer we must assume that plaintiff is of ordinary intelligence, and so assuming, it is not unreasonable to infer that he would look with suspicion upon a *guaranty* in effect that if he invested in the Lindell Company he would not lose a dime. The very extravagance of the grounds of fraud submitted were sufficient to arouse suspicion. The rule in Missouri as to promissory representations in fraud and deceit cases is rather strict as appears in the able consideration of this question in the Reed case. Without further, we rule that the grounds of fraud submitted, even when coupled with the allegation that such grounds were matters peculiarly within the knowledge of defendants and of which plaintiff was ignorant, are not sufficient to state a cause of action for fraud and deceit. We can see no difference in principle in our conclusion here and in the conclusion reached in the Reed case. There, plaintiff could not recover because of the promissory character of the grounds of fraud relied on, although the representations or promises made were accompanied by a present intention not to perform, and were made for the purpose of deceiving the representee or promisee. Here the representations were promissory, and of matters (measured by the demurrer) peculiarly within the knowledge of the representors and of which plaintiff was wholly ignorant. There can be no distinction in principle between the two situations. Also, the Reed case representations were far less extravagant than in the present case.

In view of the possibility of another trial, we think it proper to say that the Statute of Frauds (Sec. 2970, R. S. 1929, Mo. Stat. Ann., sec. 2970, p. 1858) cannot be invoked under any allegation in the petition. [Boyd v. Farmers' Bank et al. (Mo. App.), 14 S. W. (2d) 6.] We do not deem it necessary to consider other questions. If plaintiff proceeds on representations of past or existing facts constituting actionable fraud, the questions and issues will be different than here.

The judgment should be reversed and the cause remanded. It is so ordered. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur, except *Douglas, J.,* not voting because not a member of the court when cause was submitted.