UNION SERVICE COMPANY, A NEBRASKA CORPORATION, APPELLANT, v. PERL LYONS, RESPONDENT.—240 S. W. (2) 153.

Springfield Court of Appeals. April 14, 1951.

*Herbert Douglas* for appellant.

*Ruark & Ruark* for respondent.

McDOWELL, J.—This is an action on a promissory note. The suit was filed in Newton County, Missouri, October 6, 1949, and transferred, on change of venue, to Stone County, where it was tried March 16, 1950, by a jury, resulting in verdict and judgment for defendant. From this judgment plaintiff appealed.

Plaintiff's amended petition alleges that the defendant executed a promissory note April 11, 1949, payable to George G. Harrison and Marion J. Phillips, in the sum of $652.10, bearing interest from date at the rate of six per cent per annum; that plaintiff purchased the note from payees for value; that by the terms of the note payment was to be made September 15, 1949.

The petition states the note was due at the time of suit and no part had been paid except a credit of $54.50, shown by a notation on the face of the note by striking the figure $652.10 in the upper left hand corner and inserting the figure $597.60; that payment had been demanded but no part thereof had been paid. Plaintiff prays judgment for $597.60 and interest in the sum of $17.94 to October 11, 1949, and interest to date.

The answer to the amended petition denies the execution of the note and in the alternative pleads fraud in the securing of defendant's signature. It denies plaintiff is an innocent purchaser or holder for

value. The answer pleads affirmatively that the payees in the note falsely represented that the policies of insurance so sold were income or investment policies and would pay interest at the rate of $2\frac{1}{2}\%$ to the policy holder. The amended answer pleads that the payees represented that, under the contract terms and provisions of the policy, after one year had expired, the same could be surrendered and the amount paid in by the subscriber would be returned to the defendant with interest at the rate of $2\frac{1}{2}\%$; that, believing and relying upon the representations made by the payees, defendant signed a written instrument designated as an application for insurance which application was filled out by the payees of the note and was composed of fine print which defendant was unable to read and was not permitted to read. The answer then pleads that Phillips and Harrison, payees in the note, delivered defendant two policies of insurance in the amount of $5,000.00 each, which policies were for life insurance only and did not provide for income disability and did not provide for interest at the rate of $2\frac{1}{2}\%$ and had no provision for surrender after a period of one year wherein defendant could secure the return of premiums paid with interest at $2\frac{1}{2}\%$; that the policies were delivered to defendant without opportunity to read the same; that defendant is an uneducated man and was, at the time of the delivery, unable to read and understand the provisions of said policies of insurance, which facts were known to the payees of said note; and that defendant trusted, believed and relied upon the representations of said payees in all respects.

The answer pleads that the agents, Phillips and Harrison, payees in the note, represented to defendant that no premiums would fall due on said policies of insurance until the 15th day of September, 1949. It then pleads that all the statements and representations made by the payees in said note were false, fraudulent and untrue; that the policies of insurance were not as represented.

The answer pleads want of consideration for said note.

We will refer to the parties in this opinion as plaintiff and defendant as they were in the lower court.

Plaintiff, in this appeal, under its points and authorities, claims, under assignment of error No. I that the trial court erred in refusing to direct a verdict for the plaintiff at the close of all the evidence and that the verdict and judgment was for the wrong party.

Under this heading plaintiff makes three contentions numbered (A), (B) and (C).

Under contention (A) plaintiff states that under the law and the facts in the case it was a bona fide purchaser for value of the note in question and that the alleged misrepresentations relied upon by defendant in his answer would not defeat recovery upon the note.

Under assignment (B) plaintiff states that the defense is based upon false representation alleged to have been made by agents of the

Union National Life Insurance Company as to provisions contained in policies of life insurance and that the court erred in permitting testimony because the statements made, if such were made by the agents, were with reference to something to happen in the future and said representations do not relate to past or existing facts.

Under (C) plaintiff contends that the trial court erred in failing to direct a verdict because it was necessary for the defendant to prove all the elements of actionable fraud in setting fraudulent representations up as a defense which he failed to do.

Plaintiff's assignment of error II complained that the trial court erred in giving Instruction No. II requested by the defendant. Under this allegation of error plaintiff says that the instruction is based upon the defense of fraudulent representation and that it should have required the jury to find that the defendant relied upon these representations to his injury and that such representations were material. Plaintiff contends the instruction fails to so require.

We will make a brief statement of the facts and then supplement them under the heading of each issue passed upon.

The plaintiff is a Nebraska corporation with offices in Topeka, Kansas, and its principal business is the purchase of negotiable instruments at a discount. The note sued on in this case was given by the defendant to the agents of the Union National Life Insurance Company of Lincoln, Nebraska, in payment for the premiums on two life insurance policies of $5,000.00 each. George Harrison and Marion Phillips of Joplin, Missouri, were licensed insurance agents representing the Union National Life Insurance Company. These agents made five trips to the home of defendant relative to the selling of the insurance in question. The first trip was made in March 1949. On this trip defendant testified that he got in the car with the agents and that they represented to him that their company did not have an expense of advertising like other companies but loaned out its money at 6% interest and, for that reason, was able to pay policyholders 2½%. He stated they represented the investment was better than the banks, which only paid 2%; that these agents again came to his home on April 11, 1949, and at this time he was in his berry patch with two other fellows; he stated the agents asked him what he was going to do about taking out insurance and stated about the same facts as they had stated to him in March; that they told him that, after he had signed the application, if he did not want the insurance he could forget about it and throw the papers in the wastebasket and then he used these words, "So I let him go ahead and write me up as to my ability. So he wrote me up and then he asked me to sign it." The witness testified that they told him he would draw 2½% interest on whatever he paid in but he stated they did not say anything at that time about cashing the policy out. Defendant testified that he wanted to take out the insurance more for

disability than anything else, that is, if he got sick or knocked out, they would pay him $50.00 per month; he stated he signed the application on a little note book and that the agents represented that it was an application for the policy and they would keep one and send one in; that he signed two papers, one on top of the other, and he did not know he was signing a promissory note. Defendant stated he signed the written instruments twice. He testified he knew the premium was to be $652.10 and that it was to be paid September 15, 1949. Defendant stated the next time he saw the agents was on Monday after Easter Sunday; that he had written them he did not want the insurance and they came down and asked him to take a medical examination to clear them up.

Defendant stated the next time he saw the agents was in June, around 8:00 o'clock in the evening; that they there informed him he couldn't get disability insurance; that they brought two policies of insurance of $5,000.00 each instead of one for $10,000.00, as was formerly in the application of the defendant. He stated that agent Phillips represented to him then that he couldn't lose; that after the first year the defendant could get his money back plus 2½% interest; that the reason the two policies were issued instead of one, given by them, was that if he wanted to drop one of them the one he dropped would apply on the other policy and would pay it for two years ahead. He stated they told him that if he had bad crops or failure it would carry him over. Defendant stated he was with them about two hours; that they never read the policies to him; they represented to him if he wanted to cash the policies in after a year he could draw back the premium paid plus 2½% interest; that he signed the receipt for the policies and took them and he has had them in his possession since that time. He stated he received a notice from plaintiff that it had his note and it would be due September 15, and he received a demand on the due date; that he never made any objection to the note until it was due, when he took it to his lawyer and found out that the contract terms of the policies were not the same as represented by the agents of the insurance company. He testified there was nothing said about interest on the note; that he knew there was to be a reduction in the amount of the premium because they could not deliver the disability insurance and that he would have paid the note and interest had the policy been as represented.

Plaintiff's testimony is that it purchased the note from George Harrison and Marion Phillips before the due date at 5% discount, without notice of defects. The evidence shows that plaintiff purchased the note after the policies of insurance were delivered to the defendant and his receipt taken therefor.

Defendant offered evidence by a number of witnesses that prior to the sale and delivery of the insurance to defendant, these agents had made false representations to them regarding the contract of

insurance written by the Union National Life Insurance. Company and had represented that in case of surrender of policies after a year the premiums would be returned plus 2½% interest.

Plaintiff's first assignment of error designated under (A) is that it was a holder in due course of the note in question. To support its contention it cites Section 3067 R. S. Mo. 1939, which is Section 401.052 R. S. Mo. 1949. This section defines a holder in due course of a negotiable instrument. We quote:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"(1)   That it is complete and regular upon its face;

"(2)   That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"(3)   That he took it in good faith and for value;

"(4)   That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

We find the note in question meets all the requirements of the first three divisions of the statute: that is, that it is complete and regular upon its face; that plaintiff acquired it before it was overdue, without notice that it had been previously dishonored, if such was the fact; and that it took it in good faith and for value.

The only question presented in the case is requirement (4), that is, at the time the note was negotiated to plaintiff, did plaintiff have notice or was it chargeable with notice, that the note was acquired by the agents of the Union National Life Insurance Company by falsely and fraudulently representing to the maker of said note that the contract of insurance for which the note was given contained provisions that, if defendant elected to cash in the policy at the end of the first year, the company would return to him his premium plus 2½% interest and, because of such false representations, induced defendant, maker of the note, to purchase said life insurance and to execute his note therefor.

Examining the evidence in the light of this requirement of the negotiable instruments law, we find that Sherman Huff, president of plaintiff-company testified that his company purchased the note from George G. Harrison and Marion J. Phillips. This witness stated that when the note was given to the agents it was attached to the application and came into the office of plaintiff-company; that plaintiff's secretary checked the application for its correctness and premium and checked the policy to see if everything was in order; that the note was attached to this application and sent to the home office where it was again checked for correctness and the policy issued. The witness had reference to the Union National Life Insurance Company when he spoke of the home office. He stated that when the policy

was issued and delivered to the defendant, and by him accepted, defendant signed a yellow slip of paper showing the acceptance of the policy which was sent to the office of plaintiff. The witness stated the company's retail credit department then checked defendant's character and financial standing in order to determine whether or not the credit was worthy and then purchased the note. He testified that at the time the note was purchased it had a credit of $54.60 as was shown on the note introduced as plaintiff's exhibit No. 1; that the balance on the note was $597.60 plus 6% interest. He testified that at the time of the purchase his company did not know of any allegations of fraud or misrepresentations relative to the selling of the insurance policies for which the note was given; that his company purchased the note in good faith for value.

On cross-examination Mr. Huff testified that he was president of the Union Service Company, plaintiff; that he was Vice-President of the Union National Life Insurance Company and State Manager for Kansas and Missouri. He testified that mail addressed to plaintiff would come to the Union Service Company, Topeka, Kansas, and, if you wanted to write to the area office for the Union National Life Insurance Company, you would write to the witness at the same building and place. He stated he was director and stockholder of both corporations.

The witness admitted that all of the directors of the Union National Life Insurance Company, except one, were directors of the Union Service Company. He also stated they were stockholders in both companies. He then testified that one of the purposes for organizing the plaintiff-company was the purchasing of notes procured by agents of the Union National Life Insurance Company and that this business constituted the majority of the business of plaintiff-company. He stated that this business had been so operated since 1948.

The evidence clearly shows that when an agent for the Union National Life Insurance Company secured an application for insurance, it would take the note of the prospective purchaser and attach it to the application and send it to the Union Service Company where it was handled by its president, acting for the life insurance company in the capacity of vice-president. So, clearly it must appear that the Union Service Company was a subsidiary corporation organized for the purpose of handling the credit notes of the parent company. It directly participated in the checking of the application of insurance as well as a credit standing of the prospective purchasers. It first examined the note accompanying the application for insurance before it was passed to the parent company, therefore, we think that in truth it was one and the same business carried on by two different corporations through the same officials and management and plaintiff was bound by the acts and representations of the agents of said Union National Life Insurance Company.

Under the law the question of whether or not this note, at the time it was negotiated to plaintiff, was negotiated without notice of any infirmity or defect in the title of the person negotiating it was question for the jury. If there was substantial evidence to support the findings of the jury this court is bound by such verdict. Only where there is a complete absence of probative facts to support the conclusion reached does reversible error appear. Johnson v. Thompson (Mo. App.) 236 S. W. 2d 1; Ford v. Louisville & N. R. Co., 355 Mo. 362, 196 S. W. 2d 163, 167.

We find against plaintiff under point (A) of its first assignment of error.

Under (B) plaintiff contends that the trial court erred in permitting the testimony offered by the defense that the insurance agents falsely represented that the insured could cancel his policy at the end of a year and receive back the premium paid thereon plus $2\frac{1}{2}\%$ interest. It is plaintiff's contention that such representations were as to things that would happen in the future and do not relate to past or existing facts. Plaintiff cites 37 C. J. S., p. 222, Sec. 6, wherein the law is stated thus:

"* * * there can be no fraud without misrepresentation. In order that there be actionable fraud, the representation must relate to a matter of fact. Further, it must, ordinarily, relate to a past or existing fact, or an alleged past or existing fact, and not to the future, or future events or occurrences, * * *"

The law is stated in 37 C. J. S., p. 225, Sec. 8 as follows:

"No hard and fast rule can be laid down as to what constitutes a fraudulent representation in any given case, since this depends on the particular circumstances and conditions involved." Metropolitan Paving Co. v. Brown-Crummer Inv. Co., et al., 309 Mo. 638, 274 S. W. 815; Jones v. West Side Buick Auto Co. 231 Mo. App. 187, 93 S. W. 2d 1083, 1086.

Plaintiff cites Reed v. Cooke, 331 Mo. 507, 55 S. W. 2d 275; Jeck v. O'Meara, et al., 341 Mo. 419, 107 S. W. 2d 782, and Missouri Loan & Investment Co. v. Federal Trust Co. 175 Mo. App. 646, 158 S. W. 111, 113, as authority for the general rule that representations to constitute fraud must relate to past or existing facts. There can be no question but what this is the general rule and we fully agree with these cases.

The representation which defendant relied upon in this case is that the agents of the Union National Life Insurance Company represented to him that if defendant purchased these policies of insurance, he could not lose because the policies provided that defendant could surrender them at the end of a year and receive back the payment of the premium he made plus $2\frac{1}{2}\%$ interest. This would not be a representation about something that was to happen in the future but it was a representation as to what the contract of

insurance provided. This is an existing fact. Therefore, we cannot agree with the plaintiff that a representation as to the contents of the contract of insurance was a reference to something to happen in the future.

. We do think the defendant is assumed to have ordinary intelligence, and, so assuming, it is not unreasonable to infer that he would look with suspicion upon a representation made to him wherein he could be insured for an entire year and, if dissatisfied at that time, cash in his insurance, receive all of the premium back plus 2½% interest. It does seem to this court that a man of ordinary intelligence would be put upon notice that there was something wrong and that he should be held to use reasonable diligence to investigate the truthfulness of such statements before relying thereon. Jeck v. O'Meara, supra, p 786.

Under assignment (C) plaintiff complains that the trial court erred in failing to direct a verdict for plaintiff because it was necessary for the defendant to prove all of the elements of actionable fraud in setting fraudulent representations up as a defense which the defendant failed to do in this case.

. In 37 C. J. S., p. 224, Sec. 8, the law is stated:

"* * * The representation must contain the essential elements of fraud; and it must be definite and specific, mere vague, general, or indefinite statements being insufficient, because they should ordinarily put the hearer on inquiry, and there is no right to rely on such statements."

The elements of fraud are stated in Gittings v. Jeffords, 292 Mo. 678, 239 S. W. 84, 88, as follows:

"In order to properly state a cause of action based on fraud, the rule is that it is essential that the petition allege that the representations made were false and known to be so by the defendant, that the representations were made with the intention of deceiving plaintiff, that he was deceived thereby, and that relying upon such representations he was induced to act to his injury. * * *

"A further rule is that fraud will not be presumed but must be proven, and the burden of proof rests upon him who asserts it. Gass v. Evans, 244 Mo. loc. cit. 340, 149 S. W. 628; * * *"

In 37 C. J. S., p. 215, Sec. 3, the law is stated:

"The gist of an action based on fraud is fraud in defendant and damage to plaintiff; and its basic elements are false representations by defendant and reliance thereon by plaintiff to his damage. Fraud without damage or damage without fraud is not actionable; but, where both concur, an action lies. Comprehensively stated, the elements of actionable fraud consist of: (1) A representation. (2) Its falsity. (3) Its materiality. (4) The speaker's knowledge of its falsity or ignorance of its truth. (5) His intent that it should be acted on by the person and in the manner reasonably contemplated. (6) The

hearer's ignorance of its falsity. (7) His reliance on its truth. (8) His right to rely thereon. (9) And his consequent and proximate injury. * * *"

In Maupin v. Provident Life & Accident Ins. Co. (Mo. App.) 75 S. W. 2d 593, the court approves the same rule as is stated above. In this case the court stated that fraud is never presumed but must be proved by clear and convincing evidence, and persons charging fraud has burden of proving fraud. The court also lays down the rule of law that failure to prove any one of the essential elements of fraud, which are a representation, its falsity, scienter, deception, and injury is fatal to recovery for fraud.

Viewing the evidence, under the law as stated above, we find that there was evidence that the agents of the insurance company represented to defendant that the policies of insurance provided that in case they were surrendered at the end of the first year, the premium would be returned to the defendant plus $2\frac{1}{2}\%$ interest. We find that there was substantial evidence that a representation was made. We find there was substantial evidence that the policies did not contain any provision for the return of the premium at the end of one year plus $2\frac{1}{2}\%$ interest. The agent, himself, swore that he knew the policy had no such provision, therefore, there was substantial evidence as to the falsity of the statement. There is considerable doubt as to whether this representation was a material one. Defendant testified that his principal purpose in signing the application for this insurance was the disability clause in the policy providing $50.00 a month in case of injury or sickness. He, nowhere, stated he was interested in surrendering the policy or collecting the amount of the premium back plus interest, yet, he states that if he had known that the policies did not contain this clause he would not have purchased the same. So there was evidence of the materiality of the statement. There can be no question but that there was substantial evidence that the agents knew of the falsity of the statements. They stated they knew that the cause was not in the policies. There was some evidence that the representations were made with the intent that they would be acted upon by the defendant. Defendant testified that he told the agents at the time of the delivery of the policies that he didn't want the policies because he would lose what he was putting into them and that one of the agents stated at the time that he could not lose; that he would receive back all the premium he paid in plus interest. Thus the jury would have been warranted in finding that the representation was made with the intention of being acted upon. The testimony also shows that the defendant was ignorant of its falsity. He testified that the policies were not read to him; that they consisted of a great deal of fine print and he did not have time to read the policies and that he relied upon the statements of the agents as to their contents.

As we have stated before in this opinion, his right to rely thereon is very questionable. A man of average intelligence is assumed to have knowledge that he cannot secure protection by insurance for nothing. We think the law would require the defendant to know that no insurance company could provide him with protection in the amount of $10,000.00 for a whole year without compensation. Such a representation would put a man of reasonable intelligence upon notice that something was wrong and he ought to be required to investigate such statements whereas, here, he had the written policies in his hand. If he could not, himself, determine the truth or falsity of such statements, he certainly was in a position to secure advice. Under the evidence in this case we do not believe that the jury was warranted in finding, or that there was substantial evidence to support a finding, that the defendant had a right to rely upon this statement.

As to the element of consequent and proximate injury, we, likewise, hold that there was not substantial evidence to support the finding of the jury that defendant was injured by such representation. For the reasons herein set out, we find there was not substantial evidence to support the verdict of the jury that the defendant had a right to rely upon the alleged representation that the contract had provisions therein that the insured might surrender the policies at the end of the year and receive back his full premium plus $2\frac{1}{2}\%$ interest and we further find there was not substantial evidence to show that the defendant sustained any injury from such false representation. It is unbelievable that a man of reasonable intelligence could believe that he would have the protection of $10,000.00 worth of life insurance without cost to himself; that he could keep the same until the date that he knew the premium was due before he made any objection that he was induced by trickery or fraud to sign the note in the beginning or that he believed that he could surrender the same at the end of the year and receive all the premium back plus interest. We do not believe that reasonable minds could differ on these issues.

Defendant contends that there was no consideration for the note given. This contention is wholly without merit. Defendant knew when he received the two policies of insurance for $5,000.00 each that they were life insurance policies; that they did not contain a disability clause, according to his first application and, yet, he kept them without objection and received protection thereby clearly showing that he did receive beneficial compensation for the giving of the note.

Assignment of error No. II complains that the court erred in giving Instruction numbered 2 at the request of defendant.

The complaint is that the instruction, which is based on a defense of fraudulent representation, should have the jury find that defendant relied upon the alleged representations to his injury and that such representations were material.

In 37 C. J. S., p. 215, Sec. 3, the law is stated as follows:

"The gist of an action based on fraud is fraud in defendant and damage to plaintiff; and its basic elements are false representations by defendant and reliance thereon by plaintiff to his damage. Fraud without damage or damage without fraud is not actionable; but, where both concur, an action lies. Comprehensively stated, the elements of actionable fraud consist of: (1) A representation. (2) Its falsity. (3) Its materiality. (4) The speaker's knowledge of its falsity or ignorance of its truth. (5) His intent that it should be acted on by the person and in the manner reasonably contemplated. (6) The hearer's ignorance of its falsity. (7) His reliance on its truth. (8) His right to rely thereon. (9) And his consequent and proximate injury."

In Gittings v. Jeffords, supra, the court states the law as follows:

"In order to properly state a cause of action based on fraud, the rule is that it is essential that the petition allege that the representations made were false and known to be so by the defendant, that the representations were made with the intention of deceiving plaintiff, that he was deceived thereby, and that relying upon such representations he was induced to act to his injury. Remmers v. Remmers, 217 Mo. loc. cit. 557, 117 S. W. 1117."

In Stoltzfus v. Howey (Mo. App.) 54 S. W. 2d 501, 505, the court states the law as follows:

"It was competent for the jury to determine that defendant represented that the Howey Land Company owned the property; that this representation was false and was known to be so by defendant; that the representation was made with the intention of deceiving plaintiff; that plaintiff was deceived thereby, and relying upon the truth of the statement as to ownership was induced to make the contract; and that he suffered loss on account of it." Tappe v. Pohlmann (Mo. App.) 79 S. W. 2d 485, 488.

In Jeck v. O'Meara, 343 Mo. 559, 122 S. W. 2d 897, 902, the court states the law:

" 'The gist of an action founded on fraudulent representations, when damage results, is, the fraud of defendants, and when it appears that a representation is made which is known to be false at the time it is made and the person to whom it is made relies·upon it and is deceived thereby to his injury, an action lies against the party making it. * * *' "

Instruction No. 2 reads as follows:

"The court instructs the jury that if you find and believe that the defendant applied to the Union National Life Insurance Company for a policy or policies of insurance with provision for disability payments and executed the promissory note in question for the payment of premiums in anticipation of receiving said policies of insurance; and if you further find that thereafter the said life insurance company refused to issue said policy of insurance but instead issued another or different policy which did not provide for disability payments; and if

you further find and believe that thereafter the agents of said life insurance company went to the defendant in the night time and did offer him a substitute policy, and that at such time and place the defendant could not and did not read said policies and the same were not read to him; and if you find that said agents represented to the defendant that said substituted policies contained provisions and guarantees that the defendant would draw two and one-half per cent interest on said policy and that the same could be cashed in (according to the terms thereof) after one year had expired and that the defendant would receive the return of the premium paid plus two and one-half per cent interest; and if you further find and believe that such representations were false and untrue and that in truth and fact said policies did not contain any provision whereby the same might be cashed after one year had expired and defendant would thereby receive return of the premiums paid plus interest at the rate of two and one-half per cent; and if you further find that the defendant believed and relied upon the representations so made to him by the agents of the company as aforesaid (if you so find they did make such representations) and accepted the proffered policies in lieu of that which he had applied for because of said representations; and if you further find that defendant did not know he had executed the promissory note in question; and if you further find that the plaintiff in this case is not an innocent holder or purchaser for value as defined in other instructions; then your verdict will be in favor of the defendant.''

We find this instruction does require the jury to find that there was a representation made and that the representation was false and that defendant relied on the truth of such statements, but that it wholly fails to require the jury to find that said representations, when made by the agents of the insurance company, were made with a knowledge of their falsity and with the intention to induce defendant to accept the same and it wholly fails to require the jury to find that defendant was damaged thereby. We think that the requirement in the instruction that the jury find that the policies were delivered in the night time and not read to the defendant and that the defendant had no chance to read the policies might be sufficient to show that the defendant had a right to rely upon the representations.

This instruction does not comply with the law which states that the gist of an action on fraud is fraud in defendant and damage to plaintiff; that its basic elements are false representation by defendant and relied thereon by plaintiff to his damage.

We want to call attention to another statement in this instruction which we think is inconsistent. The instruction in the beginning states that if the jury believe that the defendant applied to the Union National Life Insurance Company for a policy or policies of insurance with provisions for disability payments and executed the promissory note in question for the payment of premiums in anticipation etc., thus

requiring the jury to find, as one of the elements necessary to the defense, that defendant did execute his promissory note and then down at the bottom of the instruction it said, if you further find that defendant did not know he executed the promissory note in question. We think that these two statements might be very confusing to the jury for if there was fraud in the execution of the note it was entirely void and we also think that the evidence upon the part of defendant was not sufficient to show fraud as to the execution of the note. Defendant admits that the signature on the note is his own. He states that he does not remember signing the instrument more than twice, yet he states that he knew the amount of the premium; that when the policies were delivered to him he knew he was to receive credit on the amount of the premiums. He states that he intended to pay the note when due if the terms of the policies had been as represented and that he knew the due date thereof. He states that on September 1st he was notified that plaintiff had his note and made no complaint thereto until it was due. We think under this testimony that the part as to the note should not have been submitted.

Under the law it is necessary to read all of the instructions to determine whether or not the jury would be misled. The rule is that if an instruction does not state all of the law necessary for a finding but states correctly the part instructed upon and other instructions give the full law then the instruction is not bad.

We believe, however, from examining plaintiff's instructions, that the error committed in instruction numbered 2, given for defendant is not cured. Therefore, we think this instruction is reversible error. Addis v. Swofford (Mo. Sup.) 180 S. W. 548, 552.

Judgment reversed and remanded with instructions to enter judgment for plaintiff. *Vandeventer, P. J.,* concurs. *Blair, J.,* concurs in result in Separate Opinion.

### Separate Concurring Opinion

BLAIR, J.—I concur in the result announced by Judge McDowell that the judgment in this case should be reversed and the cause remanded, with directions to the trial court to enter judgment for appellant, without considering the many alleged fallacious representations of payees or the instructions of the trial court.

It is my belief that there is not the slightest evidence in the record that the appellant had any notice of any weakness in the title to the note sued on, unless such notice can be inferred from the fact that the payees of the note took the note in payment of a premium upon an insurance policy and appellant was vice-president of that insurance company, and I do not believe such notice can be inferred.

While respondent testified to many statements and representations of payees, which were fallacious and utterly impossible of performance, there is not the slightest evidence that the insurance company

had any knowledge of the fallacious statements of the payees, and certainly no knowledge of such alleged fallacious statements of the payees can be imputed to appellant, merely because he was vice-president of the insurance company and president of plaintiff itself.

There is no need of citing cases that the purchaser of a note for value and before its maturity is not chargeable with knowledge of any weakness in the note.

If the story of respondent is to be accepted, he did a very foolish thing to sign said note under the circumstances detailed by him. He thereby put it in the power of the payees, if they were as crooked as respondent contends, to give good title to another not subject to the truth of the alleged defense.

The judgment for respondent, under the circumstances, cannot stand and should be reversed outright, with instructions to the trial court to render judgment for appellant for the face of the note, with proper interest thereon.