Mary Jane WALTON, Appellant,

v.

Evalena VAN CAMP et al., Respondents.

No. 7213.

Springfield Court of Appeals.

Missouri.

Sept. 10, 1954.

C. M. Wantuck, E. C. Hamlin, Springfield, for appellant.

John B. Newberry, Springfield, for respondents.

McDOWELL, Presiding Judge.

This appeal is from a judgment for defendants in an action for breach of an oral

contract. The amended petition alleged that on or about September 22, 1938, it was orally agreed between plaintiff and defendant that in consideration plaintiff convey her home in Springfield (described) to defendant, defendant would care for and support plaintiff for life and permit plaintiff to live in the home. That plaintiff conveyed the real estate in question to defendant, who carried out said agreement for a short time, but, in 1944, defendant failed and refused to further support plaintiff as provided in the contract and has since that time failed and refused to do so.

That as a result of the breach of said contract, plaintiff states she has been damaged in the sum of $4,500 for which amount she prays judgment and asks the court to declare the judgment a lien on the real estate described in the petition.

The answer is a general denial.

In this opinion we will refer to appellant as plaintiff and respondents as defendants, the position they occupied in the lower court.

Plaintiff alleges some nine assignments of error. However, we think that the only question really involved is whether or not there was substantial evidence to support the verdict of the jury.

Where there is substantial evidence to support the jury's finding court of appeals is bound by the jury's verdict, and only where there is complete absence of probative facts to support conclusions reached does reversible error appear. Union Service Co. v. Lyons, Mo.App., 240 S.W.2d 153; Hillhouse v. Thompson, Mo.App., 240 S.W.2d 224; Winters v. Terminal R. Ass'n of St. Louis, 363 Mo. 606, 252 S.W.2d 380.

The evidence most favorable to plaintiff shows that plaintiff acquired a home at 1623 East Cairo Street, Springfield, Missouri, in 1929; that she and defendant, Evalena Van Camp, her daughter, who, at the time was 19 years of age, moved into the property. Plaintiff says that they moved into the property to be near her daughter's work, which, at the time, was at the Telephone Company.

At that time defendant was a single person. Later, in 1938, plaintiff conveyed this home to her daughter by warranty deed.

It is the contention of plaintiff that at the time the property was conveyed, an oral contract was made between plaintiff and her daughter, whereby defendant agreed to support and care for plaintiff the rest of her life and to furnish her a home or rather permit her to live in this home.

On direct examination plaintiff's attorney, time after time, asked plaintiff, who is now 83 years of age, what agreement she had with defendant at the time of this conveyance relative to taking care of her and furnishing her a home and time after time plaintiff specifically testified that there was no agreement. She gave this testimony:

"Q. Now, what was the agreement, if any, between you and Evalena that caused you to give her the deed to your place? A. Well, when we was going to move over close to her work,—and she's the youngest,—

"Q. —I don't mean that, Mrs. Walton. I mean, what did Evalena promise to do if you gave her a deed? A. Well, just really young enough then she didn't know what she was promising. I forget how old she was."

The witness stated that at the time she acquired the property there was no mortgage on it but she placed one on it for $2,000 in 1936. She testified that as to any agreement or promises made by defendant she just could not recollect what was promised. She made this statement: "I don't know that there was any contract, * *".

She testified that she thought the place was to go to the defendant at her death.

On cross-examination defendant's attorney brought out this testimony:

"Q. Now, this agreement that you are talking about, was that agreement that you are thinking about that this law suit is about, did that happen when you moved from the Division Street property over to the Cairo property? Is that

when that took place? A. I don't know anything about agreements, only we traded and moved over there.

"Q. Well, can you tell the jury, Mrs. Walton, when it was that that agreement was made that you are talking about? A. Wasn't any agreement made. We made our agreements every morning, when we got ready for them.

"Q. There wasn't any contract where you and she set down and made a contract, was there? A. No, sir. I told you there wasn't no contract. What do you want to keep asking that for?"

The Court then told the witness that he was the Court and that he could not exactly understand what she was saying and he asked plaintiff if, at any time, defendant ever promised to take care of her the rest of her life. He asked this question:

"Q. Did she ever make a promise like that to you? A. If she got the home. * * * Yes, the home was her's, if she took care of me until I died.

"Q. And then you gave her the home, is that right? A. At my death. But I am here, yet.

"Q. That was when you deeded the property to her, is that right? * * * When you moved over on Cairo. A. Yes, sir."

W. H. Walton testified that defendant had told him she promised to take care of plaintiff during her life; that this promise was after they had moved over on Cairo Street, but he did not know when. He testified that defendant said she was to take care of her Mother the rest of her life and was to get the property at her death.

Mrs. Virgie Marlin, a sister, testified that defendant had told her she was to support her mother as long as she lived and was to have the property at her death. She did not know when the statements were made.

Mrs. Mabel Thornton testified that she had been present in the house when all the children were there and heard the discussion that defendant was to get the property at her mother's death.

Verna Walton testified she was the wife of Bill Walton, a brother, and that she heard defendant over at the church, when they were talking about old people being without a home, say that her mother had a home as long as she lived.

Chester A. Walton, a brother of defendant, testified that he started the court proceedings in this action. He said the first time he knew that the property had been deeded to defendant was in 1951 or 1952, when he went to the courthouse; that he had had no conversation with defendant about the deed because he didn't know she had one. He stated he and his brother asked defendant to deed the property back to their mother but she got mad and said "No". He knew nothing about the contract. He admitted he had been convicted of a felony.

This was all of the testimony offered by plaintiff to support her case.

Defendant, Evalena Van Camp, testified that when she and her mother moved into the property in question on Cairo Street, in 1929, she was 19 years of age. She stated her Mother promised to give her the property if she would take care of her. She stated she was working at the Telephone Office and that every check she received she gave it to her mother and got back only lunch money and car fare; that in 1932 she married a man by the name of Smith; that she got sick and her checks came to her through the mail and she had her husband cash them and bring her the money; that at that time her brothers and sisters began to cause trouble; that they made fun of her husband and told her he married her only because she had a job; that her mother made fun of the shape of her husband's head; that because of these troubles her husband rented an apartment and they moved out. She stated she continued to pay her mother's telephone bill; that in 1936 she was divorced from her husband and after that her brother, Walter, and her mother got her to come back home; that she took her furniture and moved back; that after she got

home she found there was a loan on the place and they said some one had to take it over because her mother was going to lose the place. She stated that plaintiff and her brother, Walter, told her that. She testified she told plaintiff that she did not want to take the place over because plaintiff had promised her one time before that the place was to be hers if she took care of her, and she did. She stated she told them the way they had treated her she didn't think it was right for her to take it over. She testified there were back taxes against the place and they wanted her to pay them; that she told them she would not do that unless they deeded her the property and if they would she would take the loan over; that if she took the home over she felt like it should be hers and at first they refused to deed it to her. She gave this testimony:

"A. * * * So, finally, Mr. Schwab, Irving Schwab, and Dan Scharpf came out to see the property, and they were going to foreclose. Well, Mom and Walter and I set in the living room and talked about it, and they told me that Mom was going to lose her place, if I didn't take it over."

She testified that she did not know of the loan up to that time and that plaintiff told her that the loan was the difference between the Division Street property and the Cairo Street property. She stated she later found out that the loan was put on in 1936 but she did not know who got the money. She gave this testimony:

"Q. Mrs. Van Camp, I will ask you if in September 1938, did your mother, Mrs. Mary Walton, deed the property out there on Cairo Street to you? A. Yes, sir. She and I and Walter went to Irving Schwab's office and,—well, we are back to Schwab and Scharpf coming out there. They came out to see the condition of the place. And it was run down. The back steps were down. They were wood, and they had rotted out. And they came out to see the condition of the place. Well, then when we went up to see about it, they told us, no, that they would not renew this loan."

She testified that she put in a new back porch, new concrete steps, built a new garage and paid for it and then a new loan was oked; that she paid $60 every six months; that she paid $100 when the loan was renewed, leaving a balance of $1,900. She stated she left home in March, 1943, because of the abuse of the members of her family. She gave this testimony:

"Q. I'll ask you, Mrs. Van Camp, if on or about the 22nd day of September, 1938, did you make any oral agreement with your mother that you would support her for the rest of her life? A. No, sir, I did not. The thing of it was that they wanted me to take the place over, because Mom wasn't going to have a place to live, was going to lose it, unless somebody did, and I was the only one in the family that was financially able to do so, or anybody that wanted to. Some of them had a chance at it, but they didn't want it."

She testified the first time she ever heard of any agreement was when this suit was filed in 1952.

We find from all of the evidence that there was substantial evidence to support the finding of the jury and judgment of the court.

We have examined the other allegations of error and find that there is no merit in any of them.

Judgment affirmed.

STONE, J., concurs.